981 F.2d 1245
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
James W. GIANNETTA, Plaintiff, Appellant,
v.
Peter A. BOUCHER, Defendant, Appellee.
 No. 92-1488.
 United States Court of Appeals,
First Circuit.
 December 22, 1992
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE
 James W. Giannetta on brief pro se.
 D.Maine.
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Selya, Circuit Judges.
 Per Curiam.
 
 
 1
 Plaintiff-appellant, James W. Giannetta, appeals from the district court's dismissal of his complaint for lack of subject matter jurisdiction. Appellant contests the district court's finding that "the allegation of jurisdictional amount is frivolously made with no good faith foundation in fact." Appellant also contends that the district judge erred in not recusing himself from the case pursuant to 28 U.S.C. § 455(a), despite appellant's failure to move for recusal. Finally, appellant argues that the district court abused its discretion in its intermediate orders and rulings. We affirm.
 
 I. Background
 
 2
 Appellant filed the complaint in this case on July 30, 1991 with the United States District Court for the District of Maine, claiming subject matter jurisdiction based upon diversity of citizenship of the parties. Appellant's original complaint sought damages for breach of contract and fraud "associated with the defendant's improper and unlawful use of the plaintiff's credit card, which has resulted in a financial loss to the plaintiff, and has permanently damaged the plaintiff's credit rating."
 
 
 3
 Specifically, appellant alleged that in September, 1988, appellant agreed to add appellee as an additional card holder on appellant's pre-approved application for a CitiBank Mastercard. Between September, 1988 and July, 1989, appellee received a credit card for appellant's account, but did not inform appellant that he had received it. Appellant further alleged that appellee made charges on the credit card in the amount of $4,151. The complaint stated that appellee "fraudulently converted funds from the checking accounts of Leisure Leasing Associates, owned by Plaintiff James W. Giannetta, for which he was an authorized signature for legitimate Leisure Leasing Associates expenses only" and used the funds, in the amount of $1,586, to pay personal debts incurred by the use of the CitiBank Mastercard. Finally, appellant claimed that, as a result of appellee's breach of contract and fraud, the appellant's credit rating had been damaged, causing him financial loss in the amount of $250,000.
 
 
 4
 At the time that he filed his complaint, appellant was serving a 15-year sentence resulting from guilty pleas entered in December, 1986 and March, 1987 to charges of conspiracy to possess with intent to distribute cocaine and to import hashish. On February 26, 1988, Chief Judge Gene Carter of the United States District Court for the District of Maine suspended the imposition of sentence and placed defendant on probation for a period of five years. On July 7, 1989, however, Chief Judge Carter ordered appellant's probation revoked for numerous violations of conditions of probation. See United States v. Giannetta, 717 F. Supp. 926 (D. Me. 1989).
 
 
 5
 In January, 1992, after appellant had filed his complaint in this case, Chief Judge Carter presided over a hearing on appellant's motion for reduction of his sentence. On March 4, 1992, Chief Judge Carter denied the motion, finding, in part, as follows:
 
 
 6
 The court is not persuaded that Defendant's latest round of cooperative activities with the government represents any rehabilitation of his previously determined criminal bent. This activity is simply another round of the same self-serving, opportunistic conduct by which he has continuously baited the most gullible members of the law enforcement community and by which he gulled this Court into placing him, with illuminating if disastrous consequences, on probation at the first sentencing. The Court is morally certain that the cooperative conduct reflected in the presentation most recently made to the Court is not motivated by any sense of genuine remorse for Defendant's past behavior or any desire to atone for past wrongful acts. He remains, in the view of the Court, as unreconstructed as when the Court last appraised his capacity for responsible, law-abiding conduct.
 
 
 7
 In response to appellant's complaint, appellee filed an answer and a motion to dismiss for failure to state a claim, lack of subject matter jurisdiction due to a deficient jurisdictional amount in controversy, and failure to allege fraud with the requisite specificity demanded by Fed. R. Civ. P. 9(b). Appellee asserted as an affirmative defense that the alleged expenditures were authorized by appellant and were made solely for appellant's benefit. Appellant filed a rejoinder to the affirmative defense, denying that the charges were authorized by him or were made for his benefit. The answer, motion to dismiss and memorandum in support of the motion were the only documents filed by appellee in this case.
 
 
 8
 On December 6, 1991, appellant filed an amended complaint (with leave of the court) alleging breach of contract, breach of fiduciary relationship and fraud. He sought actual damages in the amount of $75,737.00, $70,000 of which was for harm to his credit rating "for a minimum period of 7 years." Appellant also sought $50,000 in punitive damages and $50,000 in unspecified "consequential" damages. The essential factual basis for the claims remained the same as in the original complaint: that appellee had agreed to pay for his charges on appellant's CitiBank Mastercard account from his personal accounts or funds, but had actually only made such payments from appellant's accounts.
 
 
 9
 On October 28, 1991, appellant filed a motion to compel discovery and request for sanctions, seeking an order compelling appellee to respond to Plaintiff's First Set of Interrogatories, served upon him on September 17, 1991. After appellee failed to object, Magistrate Judge Cohen entered an order granting the motion to compel pursuant to Local Rule 19(c). The court ordered appellee to serve his answers to interrogatories upon appellant by November 29, 1991.
 
 
 10
 On December 6, 1991, appellant filed a motion for contempt order, default judgment, and sanctions, on the ground that appellee had failed to comply with the court order compelling discovery. On January 3, 1992, Magistrate Cohen granted the order, again pursuant to Local Rule 19(c), and directed the Clerk to enter the defendant's default pursuant to Fed. R. Civ. P. 37(b)(2). The Clerk entered the default on that date.
 
 
 11
 On December 27, 1991, appellant moved for a default judgment to be entered in the amount of $175,737 plus interest and costs. Chief Judge Carter denied the motion on January 23, 1992, on the ground that "the amount of recoverable damages is not 'a sum certain' and a trial of damages issues is required to determine damages." Following the entry of default against appellee, on February 24, 1991, the district court denied (without explanation) appellant's previously filed motions to amend the scheduling order to extend its deadlines by 30 days and to add as an additional defendant, Jamie Plourd, who allegedly conspired with appellee to commit the unlawful acts alleged in the amended complaint. On April 3, 1992, Chief Judge Carter granted appellee's motion to dismiss, finding that "the allegation of jurisdictional amount is frivolously made with no good faith foundation in fact." Appellant appeals from the judgment dismissing his complaint.
 
 II. Discussion
 
 12
 1. Dismissal for lack of subject matter jurisdiction. Title 28 U.S.C. § 1332 provides, in relevant part, as follows:
 
 
 13
 The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000. As exclusive of interest and costs, and is between--
 
 
 14
 (1) citizens of different states;
 
 
 15
 In his Amended Complaint, appellant asserted that the amount in controversy exceeded $50,000. As the Supreme Court has stated,
 
 
 16
 [t]he general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed "in good faith." In deciding this question of good faith we have said that "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."
 
 
 17
 Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). In dismissing appellant's complaint, the district court found that "the allegation of jurisdictional amount is frivolously made with no good faith foundation in fact." Before dismissing the complaint on this ground, the district court was required to find that it appeared "to a legal certainty" that appellant's claims were really for less than $50,000. Once the jurisdictional amount is challenged, as it was in this case by appellee's motion to dismiss, appellant had the burden of "alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Department of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).
 
 
 18
 We conclude that appellant has not met that burden. In his brief, appellant admits that his "out-of-pocket monetary loss" amounted to only $5,737.00. To bring the amount in controversy up to the jurisdictional minimum, appellant relies upon claims of damages resulting from harm to his credit rating and punitive damages.[1] We address each of these claims in turn to determine whether they are alleged "with sufficient particularity" to meet appellant's burden.
 
 
 19
 a) Damages for Harm to Credit Rating. It is unclear whether Maine law recognizes injury to credit rating as an element of damages for breach of contract or for fraud. In Thurston v. Continental Casualty Co., 567 A.2d 922, 924 (Me. 1989), the Supreme Judicial Court of Maine, in reversing a dismissal on other grounds, noted that damages for legal malpractice might include damages to one's credit rating. The court did not decide, however, whether the legal malpractice claim sounded in contract or in tort.
 
 
 20
 Other states have ruled that damages for injury to one's credit rating are recoverable in breach of contract cases. See Mead v. Johnson Group, Inc., 615 S.W.2d 685 (Tex. 1981) (affirming award of actual damages for loss of credit where defendant had breached contract to pay certain business loans and debts and, subsequent to that failure, plaintiff was refused a loan, lost credit privileges and had her credit accounts closed at several stores); Morris v. Deluxe Check Printers, Inc., 395 So.2d 927, 931 (La. 1981) (reversing dismissal of plaintiffs' claims for damage to their credit rating where it was reasonably foreseeable that defectively printed checks would be returned to the payee as unpaid items and that this circumstance would cause damage to the credit rating of the customer). See also 5 Corbin, Contracts § 1007 (1964 & Supp. 1992) ("there is no good reason why damage to credit rating should not be compensable in contract").
 
 
 21
 Assuming for the purposes of this appeal that Maine law recognizes injury to credit rating as an element of damages for breach of contract or fraud, appellant has failed to allege the facts in support of his claim for damages with sufficient particularity. In order to meet his burden, appellant must allege "with sufficient particularity" facts indicating that as the result of appellee's actions, appellant was denied credit and that he thereby suffered losses in the requisite amount. See 5 Corbin, Contracts § 1007 ("To prove that credit rating is harmed is to prove nominal damages; not until a loan is actually denied or a higher interest rate charged is there proof of actual damages which may be compensated.")
 
 
 22
 Appellant's amended complaint alleges the following facts in support of his claim for damages for harm to his credit rating:
 
 
 23
 Since January of 1991, Leisure Leasing Associates, which is a sole proprietorship owned by James W. Giannetta, has been unable to borrow any money or open any charge accounts as a direct result of [a negative credit report resulting from appellee's actions].
 
 
 24
 The amended complaint also alleges that appellant's credit rating "will be adversely affected for a minimum period of 7 years, thereby causing plaintiff damage in the amount of $70,000."
 
 
 25
 These allegations are simply not made with sufficient particularity to meet appellant's burden of demonstrating that "it is not a legal certainty that the claim involves less than the jurisdictional amount." Department of Recreation & Sports v. World Boxing Ass'n, 942 F.2d at 88.
 
 
 26
 The amended complaint does not identify specific loans or other credit applications which have been denied or which appellant anticipates will be denied. Nor did appellant submit affidavits identifying any denials of credit. There is no indication in his amended complaint of how he arrived at the conclusion that his damages would equal $70,000 over seven years. Appellant's wholly conclusory allegations of damages to his credit rating are insufficient to withstand appellee's motion to dismiss for lack of subject matter jurisdiction. See Jimenez Puig v. Avis Rent-A-Car System, 574 F.2d 37 (1st Cir. 1978) (vacating judgment in favor of plaintiff and remanding with instructions to district court to dismiss case for lack of subject matter jurisdiction where plaintiff's assertion of damage to his credit rating was "conclusory at best" and where there was no evidence that "[plaintiff's] credit rating was in any way adversely affected").
 
 
 27
 b) Punitive Damages. Appellant seeks to recover punitive damages in the amount of $50,000 on his fraud claim. Maine law with respect to the award of punitive damages is as follows:
 
 
 28
 Maine law allows an award of punitive damages where a plaintiff proves by clear and convincing evidence that the defendant acted with malice. Malice may be express or implied. Express malice is found where the defendant's conduct is motivated by ill will toward the plaintiff. Implied malice is established where "deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied.
 
 
 29
 Werman v. Malone, 750 F. Supp. 21, 24-25 (D. Me. 1990) (quoting Tuttle v. Raymond, 494 A.2d 1353, 1354 (Me. 1985)).
 
 
 30
 Appellant's amended complaint includes the following conclusory allegations in support of his punitive damages claim:
 
 
 31
 Defendant, by knowingly, intentionally, willfully, and wantonly using the Plaintiff's credit card, concealing its existence from Plaintiff, abusing his fiduciary responsibilities, and acting with total disregard for plaintiff's rights, has committed acts which are clearly actionable in the State of Maine by a Punitive Damage sanction.
 
 
 32
 Nowhere in his amended complaint does appellant specifically allege that appellee's conduct was motivated by ill will toward appellant. Maine law does not imply malice from mere reckless disregard of the circumstances. Tuttle v. Raymond, 494 A.2d at 1354. The conduct alleged by appellant is not sufficiently outrageous that malice can be implied. See Boivin v. Jones & Vining, Inc., 578 A.2d 187 (Me. 1990) (reversing award of punitive damages where defendant employer's conduct in making a promise of employment with no intention of fulfilling the promise, although justifying compensatory damages based upon fraud, was not sufficiently outrageous that malice would be implied); Werman v. Malone, 750 F. Supp. at 25 (holding that as a matter of law, defendant's conduct was not sufficiently outrageous to constitute implied malice). The facts alleged by appellant are, as a matter of law, insufficient to support an award of punitive damages under Maine law. See Ehrenfeld v. Webber, 499 F. Supp. 1283, 1292 (D. Me. 1980) (holding that trial court has wide discretion in evaluating punitive damages when such damages are claimed to confer federal jurisdiction). Therefore, appellant cannot rely upon his punitive damages claim to meet the requisite jurisdictional amount.
 
 
 33
 Neither appellant's claim for punitive damages nor his claim for damages for harm to his credit rating satisfy appellant's burden to demonstrate that it is "not a legal certainty" that the amount in controversy is less than the requisite amount. Therefore, the district court did not err in dismissing the case for lack of subject matter jurisdiction.[2]
 
 2. Recusal
 
 34
 Appellant raises the recusal issue for the first time on appeal. In his brief, appellant defends his failure to move for recusal below on the ground that to do so would have been futile given that a motion he made in his criminal case for recusal of the same district judge, based upon the same sources of bias, had been denied. He now claims that the judge is obliged to recuse himself pursuant to 28 U.S.C. § 455(a) because his impartiality might reasonably be questioned in light of comments made by the judge during of appellant's criminal proceedings.[3]
 
 
 35
 By failing to raise his recusal claim below, appellant has waived that claim. See In re Abijoe Realty Corp., 943 F.2d 121, 126-27 (1st Cir. 1991) (holding that disqualification claim was waived where it was not raised below). "In the words of Judge Aldrich, 'a party knowing of a ground for requesting disqualification can not be permitted to wait and decide whether he likes subsequent treatment that he receives.' " Id. at 126 (quoting In re Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960) (applying 28 U.S.C. § 144)). See also United States v. Devin, 918 F.2d 280, 294 n.11 (1st Cir. 1990) (noting that appellant's failure to move for judge's recusal below could constitute waiver of bias claim arising out of facts known prior to or during trial). Appellant does not claim that the alleged bias arose out of facts not known to him at the time that his case was before the district court. Under these circumstances, appellant's claim of bias is waived.
 
 
 36
 3. Intermediate Orders and Rulings.
 
 
 37
 Appellant claims that the district court abused its discretion "numerous times in its intermediate orders and rulings." We address each of the rulings objected to by appellant below.
 
 
 38
 a) On October 23, 1991, appellant filed a motion to compel discovery and request for sanctions, seeking an order to compel appellee to respond to Plaintiff's First Set of Interrogatories, allegedly served upon him on September 17, 1991. On November 18, 1991, the district court granted the motion and ordered appellee to fully answer the interrogatories by November 29, 1991. The court did not impose sanctions, as requested by plaintiff, "for failure to timely respond, thereby causing Plaintiff to expend time, effort and money."
 
 
 39
 Fed. R. Civ. P. 37(a)(4) provides that when a motion for an order compelling discovery is granted, the district court should proceed as follows:
 
 
 40
 the court shall, after opportunity for hearing, require the party of deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 41
 Appellant failed to specify the expenses he incurred in obtaining the order, either to this court or the court below. Appellant has cited no authority, nor have we found any authority, for including attorneys' fees among a pro se litigant's expenses in ordering sanctions under Fed. R. Civ. P. 37(a)(4). In other contexts, the general rule is that pro se litigants are not entitled to attorneys' fees. See Kay v. Ehrler, 111 S. Ct. 1435 (1991) (holding that pro se litigant is not entitled to attorney's fees under 42 U.S.C. § 1988, whether or not the litigant is an attorney); Crooker v. Environmental Protection Agency, 763 F.2d 16, 17 (1st Cir. 1985) (affirming denial of attorney's fees award to pro se litigant under Equal Access to Justice Act). Therefore, it was not an abuse of discretion for the district court to deny appellant's motion for sanctions.
 
 
 42
 b) On December 6, 1991, appellant filed a motion for contempt order, default judgment, and sanctions for appellee's failure to comply with the court's November 18, 1991 order requiring appellee to serve answers to Plaintiff's First Set of Interrogatories by November 29, 1991. Appellee did not object to the motion and on January 3, 1992 the court granted the motion and directed the Clerk to enter the defendant's default pursuant to Fed. R. Civ. P. 37(b)(2). The default was entered on that date.
 
 
 43
 On January 21, 1992, appellant filed a motion for clarification of the January 3, 1992 order to explain whether the motions for contempt and for sanctions had been granted or denied. On February 17, 1992, the district court granted the motion and explained that the motion was denied in all respects except for the motion for default.
 
 
 44
 We review a district court's decision about whether and what type of sanctions to impose under an abuse of discretion standard. Anderson v. Beatrice Foods Co., 900 F.2d 388, 393 (1st Cir.), cert. denied, 111 Ct. 233 (1990); see also Navarro Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992) (appellate review of decision to impose sanctions is deferential). "Because the imposition of sanctions is peculiarly within the province of the court in which the challenged conduct occurs, a party complaining to an appellate tribunal in respect to trial-level sanctions 'bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering [the] order.' " Anderson v. Beatrice Foods, 900 F.2d at 393 (citation omitted). Appellant has failed to meet this burden.
 
 
 45
 Fed. R. Civ. P. 37(b)(2) provides that where a party fails to obey an order to provide discovery, the court may "make such orders in regard to the failure as are just." Rule 37(b)(2) then lists several possible orders, including an order rendering a default judgment and an order "treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination." There is no requirement that the court enter a contempt order under certain circumstances or make explicit findings about its failure to enter a contempt order. The court apparently determined that entering a default was a sufficient response to appellee's failure to obey the court order. There was no abuse of discretion.[4]
 
 
 46
 c) A scheduling order was entered in this case on December 17, 1991. That order set the deadline for joinder of parties and amendment of the pleadings as January 31, 1992 and for completion of discovery as May 8, 1992. On December 30, 1991, after he had filed his motion for default, appellant filed a motion to amend the scheduling order by extending the deadlines by thirty days. In support thereof, appellant cited appellee's failure to respond to any of his discovery requests or to obey the court order compelling discovery. On February 24, 1992, the district court denied the motion.
 
 
 47
 Fed. R. Civ. P. 16(b) provides that "[a] schedule shall not be modified except by leave of the judge ... upon a showing of good cause." Given the appellee's unresponsiveness to appellant's discovery requests and to the court orders compelling discovery, the district court would have been justified in concluding that allowing additional time for discovery would not yield the information sought by appellant. Therefore, it was not an abuse of discretion for the district court to conclude that appellant's need to obtain more information from the appellee did not constitute "good cause" for amending the scheduling order.
 
 
 48
 d) Appellant appeals the district court's denial of his motion, dated January 27, 1992, to amend the complaint yet again, this time to add an additional defendant. Appellant moved to add Jamie Plourd as a defendant, "along with the additional factual pleadings."[5] Appellant failed to tender the proposed amended complaint with his motion. After the district court denied the motion without explanation on February 24, 1992, appellant filed a motion for reconsideration. The district court denied the motion and entered the following order:
 
 
 49
 The motion to add a new party is untimely and this court finds that its allowance would unduly delay the final resolution of issues among the present parties.
 
 
 50
 Although appellant moved to amend before the January 31, 1992 deadline, the deadline referred to the date by which parties must be joined and pleadings amended. Fed. R. Civ. P. 16(a) provides that scheduling orders shall limit the time "to join other parties and to amend the pleadings." The Notes of Advisory Committee explain that this section of Rule 16(a) "assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Therefore, it was not an abuse of discretion for the court to conclude that a motion to amend the pleadings and add a new party, which was filed only days before the deadline for completing the joinder of parties and the amendment of pleadings and did not include the proposed amended complaint, was untimely filed.[6]
 
 
 51
 Given that the motion to amend was untimely filed, it was within the district judge's discretion to deny the motion. Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." (Emphasis supplied). In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court held that "[i]n the absence of any apparent or declared reason-such as undue delay ..., the leave sought should, as the rules require, be 'freely given.' " Fed. R. Civ. P. 21, which deals specifically with amendments to add or drop parties, provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Although Rule 21 permits the addition of a new party "at any stage," "the court typically will deny a request that comes so late in the litigation that it will delay the case...." 7 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure 2d, § 1688 (1986).
 
 
 52
 Appellant did not seek to add a new defendant until after a default had been entered against the first defendant and a trial on damages ordered. The facts in support of the addition of a new defendant must have been known to appellant all along since appellant admits that his attempts to obtain discovery yielded no new information. In light of these circumstances, the district court did not abuse its discretion in denying appellant's motion to amend. See Quaker State Oil Refining Co. v. Garrity Oil Co., 884 F.2d 1510, 1517-18 (1st Cir. 1989) (affirming district court's denial of defendant's motion to add a fifth counterclaim where motion was filed two years after the action commenced, the facts underlying the new counterclaim were known to defendant all along and defendant failed to satisfactorily explain his delay); Cabrera v. Municipality of Bayamon, 622 F.2d 46 (1st Cir. 1980) ("The court has discretion to refuse [plaintiffs'] attempt to join a new party at this late stage of the litigation when liability has been determined and the court is trying to enforce final relief for the plaintiffs.")
 
 
 53
 Affirmed.
 
 
 
 [1]
 Appellant's claim of unspecified "consequential damages" is clearly not made with the particularity required to meet his burden. Nor is the claim further substantiated in his brief
 
 
 [2]
 Appellant's contention that it was an abuse of discretion for the district court to delay ruling on the motion to dismiss is without merit. A court may postpone ruling on such a motion to allow discovery to be completed. See 13A C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure 2d, § 1350 at 237 (1984). In fact, not postponing a ruling to allow for discovery may constitute an abuse of the judge's discretion. See Majd-Pour v. Georgiana Community Hospital, Inc., 724 F.2d 901, 903 (11th Cir. 1984) (holding that it was an abuse of discretion for the district judge to fail to give plaintiff an opportunity to discover facts that would support his allegations of jurisdiction)
 
 
 [3]
 Appellant cites as the most blatant indication of a lack of impartiality the district judge's comment at the hearing on appellant's motion to reduce his sentence that "Western Civilization ought to bar the door if [appellant] ever got a law degree." The judge made this comment in response to appellant's attorney's statements that appellant had been studying law in prison
 
 
 [4]
 Appellant's contention that the court abused its discretion in denying his Februry 12, 1992 motion for an order holding defendant in contempt and/or for sanctions fails for much the same reasons
 
 
 [5]
 Appellant claimed that Mr. Plourd had acted in concert with appellee and received many of the benefits of the charges made on appellant's credit card
 
 
 [6]
 Appellant claims that his motion to amend was filed on January 27, 1992, the date on which he allegedly gave it to the prison authorities for filing. The motion was received by the district court on January 30, 1992. For purposes of this appeal, we assume that the motion was filed on January 27, 1992