Richard SILVA, Carl Winquist, David Allsworth, George Burgess, William Benson, Charles Goodwin, Jr. and Dennis McCarthy

v.

Peter WITSCHEN, Anthony Almeida, Gerald Lynch, Edward Doyle, Leo Sullivan, Joseph Botelho, Anthony DeCastro, City of East Providence, Rhode Island and Charles O'Connell.

Civ. A. No. 90–0005 L.

United States District Court, D. Rhode Island.

Sept. 14, 1990.

Stephen Linder, Providence, R.I., for plaintiffs.

Arlene Violet, Barrington, R.I., for Almeida.

Daniel McKinnon, Pawtucket, R.I., for Lynch.

William Conley, City Sol., East Providence, R.I., for City of East Providence.

Thomas McAndrew, Providence, R.I., for DeCastro.

William Grande, Providence, R.I., for Doyle.

Fran Robins Libens and Christine Gravelle, Tillinghast, Colling & Graham, Providence, R.I., for Witschen.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motions of all defendants to dismiss for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The case arises as a result of the appointment of defendant Anthony DeCastro as the Chief of Police for the City of East Providence, Rhode Island in January of 1986. Prior to the appointment of DeCastro, the City announced that there would be a written examination for the position of Chief of Police. At that time, each of the plaintiffs and defendant DeCastro were eligible to apply for the position and all took the examination. Defendant DeCastro received the highest score and was subsequently appointed Chief of Police by the City Manager, defendant Peter Witschen.

Plaintiffs allege that defendants Almeida, Lynch, Doyle, Sullivan and Botelho (City Council members) along with Witschen as City Manager, provided DeCastro with an unfair advantage in the examination process by arranging for him to attend an executive training course designed to assist him in doing well on the exam, thereby depriving plaintiffs of their civil rights under 42 U.S.C. §§ 1983 and 1985(3).[1] Specifically, under § 1983, plaintiffs assert that they were denied: 1) the right to a fair and impartial promotional examination and 2) the right under federal law to be free from the arbitrary denial of the opportunity to qualify for the position of Chief of Police.

At the time that these events occurred, defendants Edward Doyle, Anthony Almeida, Joseph Botelho, Leo Sullivan and Gerald Lynch were councilmen for the City of East Providence. Plaintiffs have brought suit against each of these five defendants in their representative capacities as councilmen for the City. Defendants Doyle, Almeida and Lynch have also been sued in their individual capacities. As previously noted, defendant Witschen was the City Manager in East Providence in 1985 and is named as a defendant in both his representative and individual capacities. Plaintiffs have also named as defendants in this action Anthony DeCastro, the City of East Providence and Charles O'Connell in his capacity as Finance Director for the City.

Each of the defendants has filed separate motions to dismiss, or, in the alternative, for summary judgment.[2] Although

1. Plaintiffs concede that since their conspiracy claim under 42 U.S.C. § 1985(3) is not predicated on a deprivation of rights based upon a racial, or otherwise class-based, invidiously discriminatory animus, this claim must fail. The Court, therefore, grants the motions of all defendants to dismiss that claim.

2. In the instant case, both plaintiffs and defendants have filed affidavits, deposition transcripts and other extra-pleading material for this Court to consider. The Court will therefore

there are certain distinctions in the arguments presented by the individual parties, there are three main issues raised by all defendants. First, defendants assert that plaintiffs have not alleged any violation of federal constitutional or statutory law and therefore are not entitled to relief under § 1983. Second, defendants state that plaintiffs have no standing to maintain this action. Third, defendants argue that the applicable statute of limitations has run on plaintiffs' complaint. After having heard arguments on the motions of all defendants, the Court took the matter under advisement. The motions are now in order for decision.

## BACKGROUND

The undisputed facts in this case are as follows. In the fall of 1985, a vacancy arose in the position of Chief of Police for the City of East Providence. At that time, the City announced that there would be an examination for the position and properly posted notice of the promotional exam. Each of the plaintiffs and defendant DeCastro were eligible and did apply for the position.[3] It was no secret that as councilmen for the City, defendants Lynch, Almeida and Doyle were in favor of appointing DeCastro as the new Chief of Police. In fact, councilman Almeida indicated publicly at council meetings and to the newspapers that he supported the appointment of DeCastro. In late October or early November of 1985, defendants Almeida, Lynch, Doyle and Botelho had a dinner meeting at the TK Club in Pawtucket, Rhode Island at which then City Manager Witschen was present. At the dinner, these defendants discussed the fact that DeCastro was not a good test taker and tried to determine the testing procedure under which he was most likely to perform well. Plaintiffs allege that the city council members instructed City Manager Witschen to do whatever he had to do to insure the appointment of DeCastro as East Providence Chief of Police.

After this dinner meeting and before the date of the promotional exam, defendant DeCastro attended a course in executive development at the University of North Florida. Plaintiffs assert that City Manager Witschen made the arrangements for DeCastro to attend this course to assist him in passing and ranking high on the examination. According to the deposition testimony of DeCastro, however, he became aware of the course from a magazine and, after receiving permission from Witschen, made the arrangements to attend the course on his own. Regardless of who made the arrangements, plaintiffs do not dispute that DeCastro attended the course in Florida *on his own "old leave" time or vacation time and at his own expense.*[4] DeCastro received his regular salary during the period of time that he was in Florida since he was using accumulated leave time.

Defendant Witschen testified at his deposition that he encouraged all members of the East Providence Police Department to participate in in-service training. Witschen also stated that it was his policy that any individual who engaged in in-service training that was job related would continue to receive his regular salary while on leave. During the period preceding the administration of the promotional exam, not one of the plaintiffs requested permission to take any type of in-service training course. It is also a fact that not one of the plaintiffs requested any time off to study for the police chief exam. Witschen, therefore, did not deny plaintiffs the opportunity to prepare for the examination in any form, shape or manner.

After DeCastro completed the course, he and each of the seven plaintiffs took the

---

treat each motion as one for summary judgment under Federal Rule of Civil Procedure 56.

**3.** The minimum requirements were that an applicant be an active, full-time member of the East Providence Police Department with at least five (5) years experience above Sergeant and several years as a police officer.

**4.** After his appointment as Chief of Police, DeCastro submitted a claim for and received reimbursement from the City for all the expenses he incurred in attending the course under the City's police education incentive program.

same promotional examination which was administered by the International Association of Chiefs of Police (IACP), a nationally recognized testing service. During the period from 1984–1986, the contract between the City of East Providence and the police union required that the IACP give the police chief exam and that the exam consist of both a written and an oral component. The City abided by the exact terms of the contract and plaintiffs do not allege that this exam was in any way unfair or improper. The exam was graded fairly and impartially and plaintiffs do not challenge the ultimate result: that DeCastro achieved the highest score and was ranked number one by the testing service.

On January 8, 1986, the East Providence Personnel Hearing Board certified the promotional list for the position of Chief of Police. As required by city ordinance, the list contained the names of the candidates ranked first through third by the testing service. On the day the list was certified, defendant Witschen, who is the appointing authority pursuant to the City Charter, appointed the top scorer, defendant DeCastro, Chief of Police.

On November 6, 1989, defendant Botelho disclosed at a meeting of the city council that in the fall of 1985 he and defendants Lynch, Almeida, Doyle and Witschen had had a dinner meeting at the TK Club at which they discussed the upcoming police chief's exam and the type of test that would be best for DeCastro (the favored candidate). After being apprised of these facts, plaintiffs initiated the present suit.

## DISCUSSION

### I. Standard of Review

The law is well settled that summary judgment will only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In determining whether to grant such a motion, the Court must look at the record in the light most favorable to the non-moving party, *Poller v. Columbia*

*Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and must indulge all inferences favorable to that party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

### II. Deprivation of a Federal Constitutional Right

In any action brought pursuant to 42 U.S.C. § 1983, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: 1) whether the conduct complained of was committed by a person acting under color of state law and 2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). In their memorandum in opposition to the motions for summary judgment, plaintiffs assert that the defendants' actions violated their fourteenth amendment rights to due process and equal protection of the laws. It is clear to this Court, however, that plaintiffs have not been deprived of any constitutional right. Thus, accepting the facts as alleged by plaintiffs, defendants are entitled to summary judgment as a matter of law.

Plaintiffs' constitutional claim based on the denial of procedural due process requires the existence of a federally protected property interest. Such a constitutionally protected interest in the police promotional exam is not created by the Constitution, but arises, if at all, out of existing rules or understandings that stem from an independent source such as state or local law. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). Plaintiffs allege that there are two distinct property interests at stake in the instant case. First they claim an interest created by city ordinance in the fair administration of the promotional exam. In addition, plaintiffs assert that three of the plaintiffs had a further property interest in the position of Chief of Police

arising under a contract with the city and other local regulations. Based on the holding of the First Circuit in *Burns v. Sullivan*, 619 F.2d 99 (1st Cir.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), it is clear that the rights asserted by plaintiffs are not of constitutional dimension and cannot provide a basis for relief under § 1983.

In *Burns v. Sullivan*, the First Circuit rejected the contention that a police officer in Massachusetts had a constitutionally protected property interest in promotion. There, the officer brought a civil rights action claiming that his constitutional rights were violated when he was passed over for promotion. *Id.* Plaintiff Burns was one of 110 policemen seeking promotion to sergeant and had taken a civil service examination to determine eligibility for promotion. *Id.* As a result of that test, Burns was ranked ninth on the eligibility list. *Id.* In the meantime, however, a consent decree entered into to resolve a suit alleging racial discrimination in the promotional procedures of the police department provided that 28 persons on the list would be promoted to sergeant. *Id.* After an oral component to the test was administered to the top 40 on the eligibility list, a new list was compiled which again ranked the 40 applicants. *Id.* The names of the 28 persons with the highest scores were approved by the City Manager, Sullivan. *Id.* Three persons listed among the original top 28 applicants, including plaintiff Burns, were not promoted to sergeant. *Id.*

In affirming the district court's grant of summary judgment on Burns' due process claim, the First Circuit found that Burns did not possess a property interest in promotion to sergeant. *Id.* at 104. Like the plaintiff in *Burns*, plaintiffs in this action had no federally protected property interest in promotion to the position of Chief of Police and have not suffered a violation of any constitutional right.

■ Plaintiffs contend that the three plaintiffs with the highest "fairly attained" scores had a property interest in the position of Chief of Police arising under the City Charter, the City Ordinances and the City's labor contract with the police union. The Charter of the City of East Providence vested the power to appoint the City's Chief of Police exclusively in the hands of the City Manager:

> There shall be a department of police, the director of which shall be the chief of police, who shall be appointed by the city manager, and who shall be subject to removal by the city manager....[5]

The filling of vacancies in the position of Chief of Police was further governed by Section 11–66 of the Civil Service Ordinances of the City of East Providence, which provided as follows:

> Sec. 11.66. *Vacancies.*
>
> (a) *Generally.* All vacancies in the classified service shall be filled by transfer, demotion or selection of eligibles certified from an appropriate employment or promotional list ...
>
> (b) *Notice of Vacancy.* When a vacancy occurs, the head of the department or agency shall so advise the director stating the pertinent facts relative to the duties, responsibilities and qualification requirements of the position which is to be filled. The appointing authority shall indicate whether the vacancy is to be filled by transfer, demotion or selection of eligibles from an employment or promotional list.
>
> (c) *Certification of Eligibles.* In the filling of all vacancies (with the exception of transfers and demotions), the board shall certify to the appointing authority the names of the three persons standing highest on the appropriate list....
>
> (d) *Appointment.* After interview and investigation, the appointing authority shall make appointment from among those certified.[6]

---

**5.** Charter of the City of East Providence, art. VII, § 7–1.

**6.** Revised Ordinances of the City of East Providence, Rhode Island, § 11–66 (formerly § 23–18).

In addition, Section 4.03 of the 1984–86 labor contract between the City and the police union provided:

The rank of Police Chief shall be made on a competitive basis as follows:

The written examination and oral examination shall be administered by the International Association of Police Chiefs.... The City Manager will make his selection from the top three certified candidates.

In accordance with the foregoing Charter, City Ordinances and labor contract, defendant Witschen appointed defendant DeCastro Chief of Police of the city of East Providence on January 8, 1986. These provisions, taken as a whole, are insufficient as a matter of law to create a constitutionally protected property right in a promotion to Police Chief. At best, they create the possibility of an appointment among the top three contenders.

■ In *Burns*, the First Circuit reviewed the Massachusetts laws on which plaintiff based his claim that he had a property interest in promotion. As is true in the instant case, the court in *Burns* found that the relevant state law provisions provided the appointing authority (the City Manager) with options to exercise discretion relating to experience, oral test results and other subjective criteria. The court concluded:

Thus, while Burns may have had certain expectations as a result of his rank on the eligibility list any such expectations were substantially diminished by the ability under state law of Chief Pisani and City Manager Sullivan to consider subjective factors in addition to the written examination score. In light of the qualified nature of these expectations, we find that Burns' interest in becoming a sergeant did not rise to the level of a property interest entitled to constitutional protection.

*Burns*, 619 F.2d at 104. Like the City Manager in *Burns*, City Manager Witschen had discretion to make an appointment "after interview and investigation," from among "the names of the three persons standing highest on the appropriate list." Since the City Manager could appoint any one of the top three certified candidates, none of these candidates had a clearly defined property interest in promotion to Chief of Police. In any event, Witschen's appointment to the position of Chief of Police of the candidate who was ranked first by the disinterested International Association of Chiefs of Police was certainly proper and lawful in every respect.

In support of their contention that the three plaintiffs who should have been the "top three certified candidates" had a property interest in the position of Chief of Police, plaintiffs cite the case of *Hermes v. Hein*, 479 F.Supp. 820 (N.D.Ill.1979). In that case, the plaintiff police officer was ranked second on the eligibility roster and alleged that defendants had rigged and manipulated the promotional examination, thereby depriving him of his civil rights in violation of 42 U.S.C. § 1983 by wrongfully denying him a promotion. *Id.* at 823. After plaintiffs amended their complaint to allege that it was the unwavering custom and stated policy of the Board to promote the highest ranking person on the eligibility list, the district court found that plaintiffs had alleged a property interest in the promotion. *Hermes v. Hein*, 511 F.Supp. 123, 125 (N.D.Ill.1980). Ultimately, however, the Court of Appeals for the Seventh Circuit found that without evidence that this alleged policy was ever promulgated throughout the police department or stated to any of the plaintiffs, defendants were entitled to summary judgment on the due process claim. *Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir.1984). In the case *sub judice*, where there has been no allegation of "exam rigging" and no evidence of any unwavering policy to promote the highest ranking individual, defendants here are similarly entitled to summary judgment.

■ Plaintiffs assert that the main property interest applicable to all plaintiffs, namely, the property interest in the fair administration of the promotional exam, arises from the City Ordinance that establishes the city's personnel policy. The Ordinance in question establishes that 1) hiring is to be free from personal or political considerations, 2) promotions are to be

based on systematic tests and evaluations, and 3) there must be fair administration of the hiring and promotion process.[7] Even if defendants created an unfair advantage by "tutoring" DeCastro for the promotional exam, such actions did not deprive plaintiffs of any constitutional right.

In *Burns*, the plaintiff argued that the failure of the City Manager to follow procedures mandated by state civil service law gave rise to the civil rights violation. The court rejected this contention stating:

> Although we agree that the Cambridge Police Department procedures for the 1975 sergeant promotion were irregular ... we find no error in the district court's ruling that these irregularities are not constitutionally significant.

*Burns*, 619 F.2d at 104.

The irregularities in *Burns* were more serious and extensive than any alleged by plaintiffs in this case. There, the appointing authorities did not use a three person board to conduct interviews, as required by state law. *Id.* at 102 n. 5. In addition, they used a "formula" to rank the candidates for promotion which was never disclosed and which could not accurately replicate the final list of those to be promoted. *Id.* Notwithstanding these irregularities, the court in *Burns* concluded that the plaintiff did not have a claim of constitutional dimension. *Id.* at 104.

In the instant case, the allegation that defendants favored DeCastro for the appointment as Chief of Police and assisted him in preparing for the promotional exam by arranging for him to attend an executive training course are, as in *Burns*, insufficient to establish a violation of a constitutional right. This is especially true in light of plaintiffs' failure to allege that any one of them attempted to pursue similar opportunities or even considered attending such a workshop. Plaintiffs do not contend that it was unusual or improper for Witschen to authorize an officer to attend a professional development course. Nor do plaintiffs suggest that Witschen's approval of DeCastro's pursuit of further job-related education and training was undertaken secretly, surreptitiously or without plaintiffs' knowledge. As the First Circuit stated in *Dipiro v. Taft*, 584 F.2d 1, 3 (1st Cir.1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979),

> [The plaintiff] had a protected interest in being allowed to compete for the position of fire chief. He was accorded this right. The mayor, as authorized by the City Charter, selected the final nominee from the top three certified candidates.... The federal courts are not super personnel boards ordained to reevaluate appointments and dismissals made in the course of state and local government operations. Labelling a firing or hiring unconstitutional does not make it so.

In the instant case, plaintiffs were afforded the right to compete for the position of Chief of Police. That some defendants were in favor of appointing DeCastro to the position and allegedly arranged for him to attend a training course to help him perform well on the promotional exam is not constitutionally relevant. In short, a constitutional violation cannot be constructed from such flimsy material.

Plaintiffs' allegation that they were deprived of equal protection of the laws as guaranteed by the fourteenth amendment to the Constitution stems from the alleged dissimilar treatment they received as compared to defendant DeCastro in the period preceding the giving of the promotional examination. In *Dipiro v. Taft*, 584 F.2d

---

7. Specifically, Sec. 11–2 of the East Providence Revised Ordinances (formerly § 23–2) states:

(a) Employment in the city service shall be based on merit and fitness and shall be free of personal and political considerations.

(b) Just and equitable incentives and conditions of employment shall be established and maintained to promote efficiency and economy in the operation of the city government.

(d) Appointments, promotions and other actions requiring the application of the merit principle shall be based on systematic tests and evaluations.

(e) High morale shall be maintained by fair administration of this chapter and by every consideration of the rights and interests of employees consistent with the best interests of the city and the public.

at 3, the First Circuit held that there must be evidence of "intentional and purposeful discrimination" in order to establish a violation of plaintiffs' right to equal protection of the laws. In the case *sub judice,* there is no such evidence and thus no violation of a constitutional right.

Like the plaintiff in *Dipiro,* the plaintiffs in this case were accorded all to which they were entitled—the ability to compete for the position of Chief of Police. None of the plaintiffs were denied the opportunity to take the same training course that DeCastro took and there have been no allegations of any improprieties in the administration of the exam. The facts that none of the plaintiffs were chosen to be the new Chief of Police and that a competitor was chosen for entirely legitimate reasons (including his highest score on the promotional exam) are woefully insufficient to make out a claim for denial of equal protection.

In sum, it is clear that plaintiffs have not alleged a single act on the part of any of the defendants which resulted in a deprivation of plaintiffs' constitutionally protected rights. Plaintiffs admit that they received proper notice of the subject vacancy and were afforded the opportunity to take the necessary written and oral examinations. They admit that those examinations were administered fairly and impartially by a disinterested outside testing service and that their performance on the exams was inferior to that of defendant DeCastro. Furthermore, plaintiffs recognize that under the East Providence City Charter, City Ordinances and the police department labor contract, the City Manager is free to select any one of the top three scorers on the mandatory examination for whatever reason he desires. The only act which plaintiffs even allege was improper was the City Manager arranging for DeCastro to take an executive training course in order to help him prepare for the promotional exam. As stated above, such an act was not illegal or unlawful under state or municipal law let alone a federal constitutional violation. Thus, there being no violation of any constitutional right involved in this case, the Court must grant summary judgment in favor of defendants. Because summary judgment must be granted on this ground alone, the Court need not consider the other issues raised by defendants.

### III. *Attorneys' Fees*

Defendants in this action have requested an award of attorneys' fees and costs against plaintiffs under 42 U.S.C. § 1988. Pursuant to § 1988, a court may award attorneys' fees and costs to the prevailing party in a civil rights suit brought under § 1983. The Supreme Court has authorized the award of attorneys' fees to a prevailing defendant in a Title VII case "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). In accordance with the Court's ruling in *Christiansburg Garment Co.,* the First Circuit upheld a district court's award of defendant's attorneys' fees and costs under 42 U.S.C. § 1988. *Fidelity Guar. Mortgage Corp. v. Reben,* 809 F.2d 931 (1st Cir.1987). There, the court held that "where the plaintiff had no factual basis for the complaint and the only reason for persisting in prosecuting the suit was for harassment, an award of attorney's fees can and should be made to deter such conduct in the future ..." *Id.* at 936.

At this time, the Court lacks sufficient facts to make a determination as to whether defendants should be awarded attorneys' fees under § 1988. It is obvious that an evidentiary hearing is necessary in order to determine the factual context in which this suit was instituted and the role of each plaintiff in bringing this action. The Court cannot take judicial notice of the details of the long smoldering dispute that has ignited into flames from time to time in East Providence between the police union on one hand and Chief DeCastro and city officials on the other, and how this action fits in the overall picture.

In addition, none of the attorneys for defendants have filed contemporaneous time records indicating the number of

**806**

hours spent working on this litigation as required by *Grendel's Den. Inc. v. Larkin,* 749 F.2d 945, 951–52 (1st Cir.1984). The Court, therefore, will hold defendants' requests for attorneys' fees in abeyance at the present time and schedule a hearing on the matter at a later time.

■ In addition, the First Circuit has recently determined that under the proper interpretation of Federal Rule of Civil Procedure 11, sanctions should be imposed against a plaintiff's attorney "when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Lancellotti v. Honorable Thomas F. Fay,* 909 F.2d 15 (1st Cir.1990) (citation omitted). There are, therefore, two grounds for imposing sanctions under Rule 11: the "reasonable inquiry" clause and the "improper purpose" clause. *Id; see also Kale v. Combined Ins. Co.,* 861 F.2d 746, 757 (1st Cir.1988) (noting that Rule 11 mandates an objective standard of reasonableness). Therefore, defendants should be given an opportunity to amend their motions in order to make a claim for attorneys' fees against plaintiffs' counsel under Rule 11.

### CONCLUSION

For reasons expressed above, the motion of each defendant for summary judgment is granted. The clerk will *not* enter judgment for defendants at this time.

Each defendant hereby is given leave to file an amended motion for the assessment of counsel fees and costs against plaintiffs and/or plaintiffs' attorney within 30 days of this decision. The amended motion shall set forth the statute or rule relied upon for the assessment of said fees and costs and be supported by a memorandum of fact and law. The motion must also be supported by a detailed contemporaneous accounting of the time spent by the attorneys on this

matter as required by *Grendel's Den. Inc. v. Larkin, supra.*

*It is so Ordered.*