Richard SILVA, et al., Plaintiffs,
Appellees,

v.

Peter WITSCHEN, City of East
Providence, et al., Defendants,
Appellees,

Stephen Linder, Appellant.

No. 93–1720.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1993.

Decided March 24, 1994.

Edward Greer, RI Affiliate, American Civil Liberties Union, was on brief, for appellant.

William J. Conley, Jr., City Sol., for defendant, appellee City of East Providence, RI.

Before TORRUELLA, CYR and STAHL, Circuit Judges.

CYR, Circuit Judge.

Appellant Stephen Linder, Esquire, challenges the sanction imposed against him pursuant to Fed.R.Civ.P. 11 for filing a groundless complaint against defendants-appellees. After careful review, we affirm the district court sanction order in all respects.

## I

### BACKGROUND

In the fall of 1985, the City of East Providence, Rhode Island, announced that an independent testing service would administer a competitive examination for the position of Chief of Police. A city ordinance empowered the City Manager, defendant-appellee Peter Witschen, to fill the position from among the top three performers on the examination. *See* Civil Service Ordinance of East Providence, R.I. §§ 11–66(c), (d). It was no secret that some members of the City Council, including defendants-appellees in this action, favored the appointment of defendant Anthony DeCastro. DeCastro achieved the highest examination score and, in January 1986, was appointed by the City Manager.

Following the appointment, a rift arose between Chief DeCastro and the Fraternal Order of Police Union (Union). At a public session of the City Council years later, it was disclosed that several defendants had discussed beforehand with DeCastro the likelihood that a competitive examination would be administered and that DeCastro's test-taking skills were weak. Finally, it was also disclosed at the City Council meeting that DeCastro had attended a preparatory course in "executive development" on his own time, for which he was reimbursed pursuant to a City policy permitting reimbursement for "in-service training."

Present at the City Council meeting were several of the plaintiffs, all disappointed applicants for the position, and appellant Linder, counsel to the Union. Shortly after the City Council meeting, two of the plaintiffs met briefly with Linder and discussed factual grounds for a possible lawsuit in their behalf. Thereafter, Linder conducted limited discussions with other plaintiffs along similar lines.

On January 3, 1990, Linder initiated the present action under 42 U.S.C. § 1983 in the United States District Court for the District of Rhode Island, charging deprivations of plaintiffs' due process right to a fair and impartial promotional examination as provided by the City ordinance, and of an alleged right of "equal protection" to compete for the position. Although the complaint pleaded

relevant circumstances which the district court later characterized as "suspicious," *see supra* pp. 726–727, it neither alleged—nor asserted facts sufficient to support an inference—that the examination was either "rigged" to favor DeCastro or administered or graded unfairly.

Prior to filing the complaint, Linder made a copy available to the City Solicitor, who advised Linder that it was "unjustified," and warned that the City was likely to demand attorney fees for defending against it. Linder was not deterred.

Ultimately, the district court entered summary judgment for all defendants on the ground that "the complaint made no allegations of 'exam rigging,'" which was the essence of plaintiffs' claim. *Silva v. Witschen,* 745 F.Supp. 798, 803 (D.R.I.1990).[1] The defendants thereafter requested attorney fees, either under 42 U.S.C. § 1988 or as a sanction under Fed.R.Civ.P. 11.

In due course, the district court conducted a lengthy hearing to determine *whether* the fee request should be allowed on either ground. The amount of any fee award was not before the court at the hearing. Following the hearing, the court denied the request for an award under section 1988, on the ground that the plaintiffs had not acted in bad faith. The court found, however, that Linder was subject to sanction under Rule 11 for filing a groundless complaint. The defendants later requested fees and costs totalling almost $250,000, which the court reduced to $75,349.96, approximately two-thirds of which was attributed to the merits phase and one-

third to the sanctions phase of the district court litigation.

## II

### *DISCUSSION*

■ All aspects of the Rule 11 sanctions decision are reviewed for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990); *Metrocorps, Inc. v. Eastern Mass. Junior Drum & Bugle Corps Ass'n,* 912 F.2d 1, 2 (1st Cir.1990). As the party challenging the sanctions award, Linder bears the formidable burden of establishing abuse of discretion. *See Navarro–Ayala v. Nunez,* 968 F.2d 1421, 1425 (1st Cir.1992). An abuse of discretion occurs only if "'a material factor deserving significant weight is ignored, ... an improper factor is relied upon, or ... all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394 (1st Cir.) (quoting *Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1081 (1st Cir.1989)), *cert. denied,* 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).

### A. *Amended Rule 11*

On December 1, 1993, during the pendency of the present appeal, an amended version of Rule 11 became effective, governing "all proceedings in civil cases thereafter commenced and, *insofar as just and practicable,* all proceedings in civil cases then pending." Order Amending Federal Rules of Civil Procedure, 113 S.Ct. CDLXXVIII (Apr. 22, 1993) (emphasis added).[2] Linder therefore contends

---

1. The judgment on the merits is not challenged on appeal.

2. The sanctions provision in the pre-amendment version of Rule 11 stated:

   If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
   Fed.R.Civ.P. 11 (1987) (emphasis added).

   The relevant portion of the sanctions provision in the amended version reads as follows:
   (c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) [Representations to Court] has been violated, the court *may,* subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
   (1) *How Initiated.*
   (a) *By Motion.* A motion for sanctions under this rule ... shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but *shall not be filed* with or presented to the court *unless, within 21 days after service* of the mo-

that amended Rule 11 applies on appeal in the present case.

■ We need not decide whether a case pending on appeal December 1, 1993 is subject to the amended rule. The promulgation order precludes application of the amended rule even in "cases then pending" insofar as it would be *unjust or impracticable* to do so. *Id.* To remand for a district court determination under amended Rule 11 in these circumstances is not only infeasible but would work an injustice to plaintiffs-appellees. *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1584 (11th Cir.1986) (finding no reason to test Rule 11 sanctions under amendment to 1983 rule not in effect when sanctioned conduct occurred) (decided under virtually identical terms of 1983 promulgation

order: "shall govern . . ., insofar as just and practicable, in proceedings then pending." Order Amending Rules of Civil Procedure, 461 U.S. 1097 (1983)). *Cf. Freund v. Fleetwood Enters., Inc.*, 956 F.2d 354, 363 (1st Cir.1992) (declining to apply amended Fed. R.Civ.P. 15(c) which would work "manifest injustice");[3] *Agretti v. ANR Freight Sys., Inc.*, No. 89 C 5492, 1994 WL 46670, at *1 (N.D.Ill. Feb. 14, 1994) (finding retrospective application of 1993 amended Rule 11 "neither just nor practicable"); *In re Taxable Mun. Bond Sec. Litig.*, No. MDL 863, 1994 WL 34924, at *4 (E.D.La. Feb. 3, 1994) (declining to apply 1993 amended rule where sanctioned conduct occurred prior to Dec. 1, 1993 and pre-amendment standards had been applied at sanctions hearing).[4] This is particularly true since Linder's sanctionable conduct was

---

tion (or such other period as the court may prescribe), *the challenged paper*, claim, defense, contention, allegation, or denial *is not withdrawn or appropriately corrected.* If warranted, the court may award to the part prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

(2) *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11 (Dec. 1, 1993) (emphasis added).

3. *Freund* rests upon the principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In the instant case, such "statutory direction" derives from the Supreme Court's power to prescribe rules of procedure. *See generally* 28 U.S.C. §§ 2071–2113. Section 2074(a) of Title 28 states that "the Supreme Court shall not require the application of such [amended] rule to further proceedings then pending to the extent that, *in the opinion of the court in which such proceedings are pending,* the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies." 28 U.S.C. § 2074(a) (emphasis added).

4. Linder argues that he would not have been sanctioned under the amended rule, because he would have withdrawn the complaint as allowed under the 21–day "safe harbor" provision. *See* Fed.R.Civ.P. 11(c)(1)(A) (Dec. 1, 1993); *supra* note 2. Linder cannot have it both ways, however. His argument is based on the assumption that he would have availed himself of a "safe harbor" provision had he received notice of the *particular* deficiencies in the complaint. This retrospective appraisal ignores the reality that Linder flatly disregarded a substantially equivalent warning from the City Solicitor before the complaint was ever filed. *See supra* p. 726–727. Thus, Linder's argument cannot prevail unless appellees failed to point out particular deficiencies in the complaint. However, appellees' statement of relevant facts on appeal represents, and Linder does not deny, that the City Solicitor "informed [Linder] of *the pleading deficiencies,* and of the City's probable attempt to collect sanctions, before the pleading was even filed." (Appellees' Br. at 16) (emphasis added). Since Linder neither denies appellees' representation nor included the relevant portions of the hearing transcript to which appellees' statement of facts cites, *see* Fed.R.App.P. 10(b), 11(a) (appellant bears burden of including material items in appellate record), we will not indulge an assumption foreclosed by the record before us. It would be unjust to permit yet a *second* "safe harbor" refuge for Linder to escape responsibility for the expense occasioned an innocent party which forewarned him that the complaint was unjustified. Furthermore, even if the cost and expense occasioned by Linder's sanctionable conduct were to be disregarded, it would be unjust to permit these satellite proceedings to be further extended by remanding to the district court to afford Linder the opportunity to "withdraw" a groundless complaint previously dismissed on the merits.

solely responsible for the satellite proceedings relating to Rule 11 sanctions. Moreover, it would be impracticable, not only to undo the harm actually occasioned defendants, but to review the district court order under the altered standards established by amended Rule 11.[5] *See Hashemi*, 784 F.2d at 1583–84 (rejecting claim, under virtually identical 1983 promulgation order, that amended Rule 11 standards should apply "because the case was pending on appeal by the plaintiff at the time the Rule became effective"); *cf. Freund*, 956 F.2d at 363 (refusing to apply amended rule which would work "manifest injustice"). Since an unwarranted remand would otherwise be necessary in these already protracted satellite proceedings, at inordinate delay and expense to innocent parties, we review the district court sanction order under the pre-amendment Rule 11 standards in force at the time the sanctioned conduct occurred.

### B. *Appropriateness of Rule 11 Sanctions*

Prior to December 1, 1993, Rule 11 mandated sanctions for interposing a filing *either* for an improper purpose *or* under circumstances in which a competent attorney, on objectively reasonable inquiry, could not have believed that the filing was grounded in fact *and* warranted either by existing law or by a good-faith argument for the extension, modification or reversal of existing law. *Lancellotti v. Fay*, 909 F.2d 15, 19 (1st Cir.1990).

### 1. *Legal Basis for Action*

Linder "concedes" that the complaint violated Rule 11, in that he failed to make the objectively reasonable legal inquiry required under our case law. He argues, however, that *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), struck down the heightened pleading requirement previously espoused by this court in section 1983 actions.[6] Since *Leatherman* should be given retroactive effect, *see Harper v. Virginia Dep't of Taxation,* — U.S. ——, —— – ——, 113 S.Ct. 2510, 2516–17, 125 L.Ed.2d 74 (1993) (general rule of retroactivity in civil cases), Linder contends that sanctions were improperly imposed. This argument is a red herring.

The district court order neither mentioned nor applied a heightened pleading standard, nor did it cite to any case involving a heightened pleading requirement. *See Silva*, 745 F.Supp. at 801. Rather, the court determined that there was no legal basis whatever for Linder's reliance on a federally protected property interest, in principal part because plaintiffs made no allegation of "exam-rigging." *See Burns v. Sullivan*, 619 F.2d 99, 104 (1st Cir.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).[7] *Compare Silva*, 745 F.Supp. at 803, *with Hermes v.*

---

**5.** For example, deterrence was the primary purpose served by Rule 11 sanctions prior to December 1, 1983. *See Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454. Yet "courts ... ha[d] noted that compensatory and punitive purposes also [we]re served by sanctions [under old Rule 11]." Charles A. Wright & Arthur Miller, 5A *Federal Practice and Procedure* § 1336 at 100–101 (1990); *Anderson*, 900 F.2d at 394–95. Under amended Rule 11, however, "the purpose of ... sanctions is to deter *rather* than to compensate...." Fed. R.Civ.P. 11 advisory committee's note (emphasis added). Thus, under amended Rule 11, "if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty," *id.*, though the court may award monetary sanctions to a party in "unusual circumstances," *id.* Although sanctions were mandatory under old Rule 11, *Lancellotti v. Fay*, 909 F.2d 15, 19 (1st Cir.1990), but are discretionary under the amended rule, Fed.R.Civ.P. 11(c) (Dec. 1, 1993) (if court finds a violation, "the court *may* ... impose an appropriate sanction" (emphasis added)), in these circumstances we believe it would be a gross injustice to deprive defendants-appellees of compensation for the costs caused by Linder's reckless disregard for the requirements of Rule 11 despite the City's advance warning.

**6.** In *Leatherman*, the Court rejected the Fifth Circuit's "more demanding rule for pleading a complaint under section 1983 than for pleading other kinds of claims for relief." — U.S. at —— – ——, 113 S.Ct. at 1162–63.

**7.** As the district court observed:

Like the City Manager in *Burns*, City Manager Witschen had discretion to make an appointment "after interview and investigation," from among "the names of the three persons standing highest on the appropriate list." Since the City Manager could appoint any one of the top three certified candidates, none of these candidates had a clearly defined property interest in promotion to Chief of Police.

*Silva*, 745 F.Supp. at 803.

*Hein,* 511 F.Supp. 123, 125 (N.D.Ill.1980) (complaint alleging exam-rigging states § 1983 claim in circumstances where unwavering custom and policy is to promote applicant achieving highest score). The court concluded that the only protected property interest at issue was plaintiffs' due process right to compete fairly for the position of Chief of Police,[8] and since they had alleged no facts evidencing such a deprivation the action was groundless as a matter of law. *Silva,* 745 F.Supp. at 805. Neither before the district court, nor on appeal, has Linder raised doubt as to the soundness of the district court ruling that the complaint failed to state a cause of action.

### 2. *Improper Purpose*

The district court further found that Linder attempted—by bringing the present action—to intimidate "the City into terminating DeCastro.... [thus] using this case to further an improper objective." *Silva v. Witschen,* C.A. No. 90–0005L, slip op. at 18–19 (D.R.I. Nov. 5, 1992) (order imposing sanctions). Although Linder admits to a "dual motive," he argues that Rule 11 sanctions may not be imposed for commencing an action for an "improper purpose" if there was also a proper motive, in this case vindicating plaintiffs' rights. The district court found that—

> Linder, who was also the attorney for the Union, was wearing two hats here. Although he purported to represent the plaintiffs in this case, *all his actions were calculated to achieve the goal of the Union,* the ouster of DeCastro. While plaintiffs honestly believed in their cause of action, Linder was using their lawsuit as a bargaining chip to pressure the City on behalf of the Union to terminate DeCastro as Chief of Police.

*Id.* at 19 (emphasis added).

■ Linder's contention that his conduct is not sanctionable because he intended to protect plaintiffs' legal rights is yet another red herring. We are aware of no authority

or other basis for the view that an attorney who files a groundless complaint, for an improper purpose and without reasonable inquiry, *see* Fed.R.Civ.P. 11, is exonerated from sanctions because he was simply asserting groundless nonexistent legal claims in behalf of his clients. *Cf. Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986) ("[P]leader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate."). Accordingly, we uphold the district court finding of improper motive. *Cf. Mir v. Little Co. of Mary Hosp.,* 844 F.2d 646, 653 (9th Cir. 1988) (using litigation to force party to grant privileges previously denied is "improper purpose").

### C. *Appropriateness, Nature and Severity of Sanctions*

#### 1. *Rule 11 Hearing*

■ The procedure for determining whether a sanction should be imposed and, if so, its nature and severity, is left in the first instance to the trial court's sound discretion. Linder contends that the district court abused its discretion, *see Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460, by unnecessarily convening a hearing on the request for Rule 11 sanctions. *See also* Fed.R.Civ.P. 11 advisory committee's note (sanctions procedure depends on circumstances and severity of sanction under consideration); *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 607 (1st Cir.1988) (similar). He argues that there was no reason to conduct a Rule 11 hearing once the court found no legal basis for the complaint, *see Silva,* 745 F.Supp. at 803, since sanctions were mandatory under the pre-amendment version of Rule 11, *Jensen v. Frank,* 912 F.2d 517, 524 n. 6 (1st Cir.1990).

Linder once again mischaracterizes the proceedings below. The grant of summary judgment against plaintiffs did not preordain the imposition of any Rule 11 sanction

---

**8.** The court rejected the claim that plaintiffs were deprived of "equal protection" by the dissimilar treatment accorded DeCastro, citing *Di Piro v. Taft,* 584 F.2d 1, 3 (1st Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979). *See Silva,* 745 F.Supp. at 805 (finding no evidence of intentional discrimination).

against Linder. Rather, the hearing was necessary to determine *whether* Linder had *violated* Rule 11 and, if so, to determine an appropriate sanction. Additionally, defendants requested a fee award against plaintiffs under 42 U.S.C. § 1988 as well, which the court considered at the same hearing and later denied. The claim that the district court abused its discretion by conducting a hearing to resolve defendants' fee requests under Rule 11 and section 1988 is frivolous.

▆ Linder has fallen far short of a showing of abuse of discretion.[9] Rule 11 contemplates "giv[ing] effect to [its] central goal of deterrence," *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460, while avoiding unnecessary satellite litigation; the proper balance is left to the reasoned discretion of the district court, *id. Cf. Fashion House,* 892 F.2d at 1082 (district court is in best position to determine appropriate remedy). The hearing was necessary for two reasons: to determine *whether* there was a proper basis for assessing attorney fees against plaintiffs under 42 U.S.C. § 1988, and *whether* Linder's filing of the groundless complaint warranted imposition of a Rule 11 sanction. *Silva,* slip op. at 2–3 (Nov. 5, 1992); *Silva,* 745 F.Supp. at 806. Thus, among the matters at issue in the Rule 11 sanctions hearing were whether Linder: (1) brought the action for an improper purpose and (2) after reasonable inquiry, could have formed a *reasonable*

*belief* that the complaint was well grounded in fact and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R.Civ.P. 11 (1987); *see Lancellotti,* 909 F.2d at 19. The court found that "Linder failed to make a reasonable inquiry to determine that the complaint was well founded in fact ... [and] even more important [the] lawsuit was baseless as a matter of law." *Silva,* slip op. at 17 (Nov. 5, 1992). *See Unanue–Casal v. Unanue–Casal,* 898 F.2d 839, 841–42 (1st Cir.1990) (Rule 11 sanctions against counsel warranted for filing frivolous removal petition with "no plausible legal basis" and for "improper purpose").[10]

### 2. *Reasonableness of Sanctions*

▆ Linder's remaining claim is that the attorney fee award is excessive. Compensatory sanctions under Rule 11 must be reasonable in amount.[11] *Navarro–Ayala,* 968 F.2d at 1427 (citing cases).

### a. *Merits Phase*

The district court awarded the City [12] $53,528.81 in attorney fees and costs incurred during the merits phase of the litigation by all defendants, representing approximately 487 hours devoted to legal services by counsel appearing for the five individual defendants, and by the City Solicitor in behalf of

9. Though hampered by the absence of a sanction-hearing transcript, we have reviewed Linder's claims on the available appellate record, *see United States v. One Yacht Named Mercury,* 527 F.2d 1112, 1113 (1st Cir.1975) (despite incomplete record, appellate court reviews merits as record allows), cognizant that it was Linder's burden to ensure an adequate appellate record, *see Navarro–Ayala,* 968 F.2d at 1425; *see also* Fed.R.App.P. 10(b), 11(a) (requiring appellant to assemble requisite record).

10. Linder claims that the district court did not need to address the "improper purpose" prong of Rule 11 once it had been determined that he had failed to make a "reasonable inquiry." We find no abuse of discretion. The appellate record provided by Linder, *see supra* note 9, does not indicate which issue was first decided, why the hearing proceeded to the second issue, or even whether Linder preserved this claim by asserting it in timely fashion below. Moreover, the further inquiries as to the appropriateness and severity of Rule 11 sanctions were signifi-

cantly informed by the court's determination that not one but two grounds existed for sanctioning Linder. *See Unanue–Casal,* 898 F.2d at 841–42 (Rule 11 sanctions against counsel warranted by both prongs of rule).

11. Another Linder claim—that attorney fees are not allowable under Rule 11—directly contradicts the express language of Fed.R.Civ.P. 11 ("an appropriate sanction ... may include ... a reasonable attorney's fee"). *See also Mariani v. Doctors Assocs., Inc.,* 983 F.2d 5, 8 (1st Cir. 1993); *see generally* Charles A. Wright & Arthur R. Miller, 5A *Federal Practice & Procedure,* § 1336 at 113 (1990) ("attorneys' fees have become the Rule 11 sanction of choice").

12. The district court found that the City is the "only party interested in receiving sanctions," *Silva,* slip op. at 4 (May 6, 1993), because it had agreed to pay the defendants' counsel fees incurred in this action, *id.* Consequently, it ordered all sanctions paid to the City.

the City and the same five individual defendants in their official capacities. Linder does not challenge the individual fee applications, but asserts that the aggregate hours were not reasonably required because defendants did not take proper measures to mitigate fees by delegating jointly-required in-court services and submitting unitary filings to avoid unnecessary duplication of services. *See Navarro–Ayala,* 968 F.2d at 1427 (compensatory sanctions allowed only for costs *reasonably* incurred) *citing Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 879 (5th Cir.1988); *see also Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988) (similar).

■ The district court rejected Linder's argument, finding instead that "if plaintiffs' case had not been so utterly without merit, this 'redundant' representation might have proved essential to these defendants," *Silva,* slip op. at 13 (May 6, 1993), and therefore that the employment of multiple attorneys during the *merits phrase* was reasonably required. We agree that it was reasonable for the five defendants, in their *individual capacities,* to obtain representation by their own counsel while the merits of plaintiffs' claims remained in litigation, since counsel to the City represented the individual defendants in their *official capacities* only. Linder points to no authority for the implicit assumption that reasonable mitigation efforts require that the private interests of parties sued in their individual capacities must go unrepresented. *Cf. Mariani,* 983 F.2d at 8 n. 5. Nor has he shown that the respective private interests of these individual defendants during the merits phase did not conflict to the point that mutual representation was precluded.[13] *Cf. Brandt v. Schal Assoc., Inc.,* 960 F.2d 640, 648 (7th Cir.1992) ("[w]e have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks").

■ The court further found that "the total time spent by each attorney on the merits was not excessive." *Silva,* slip op. at 13 (Nov. 5, 1992). The court also disallowed all fees for legal services, except those services directly rendered to the City, after the point in time when it became clear that no conflicts of interest precluded the individual defendants' joint representation by counsel to the City. *See Brandt,* 960 F.2d at 649 (no failure to mitigate where sanctioned attorney's broad complaint necessitated investment of extensive attorney time in defense and district court carefully monitored procedure). A party is required to mitigate expenses only insofar as is reasonable. Our review of the record discloses no basis for supposing that the district court abused its discretion by allowing a $53,528.81 reimbursement to the City for legal services rendered during the merits phase. *See Navarro–Ayala,* 968 F.2d at 1426 ("When the district court settles upon a monetary sanction and fixes a dollar amount, a reviewing tribunal should defer, within broad limits, to the district court's exercise of its informed discretion. Nevertheless, the court of appeals must be careful not merely to 'rubber-stamp the decisions of the district court.'") (citation omitted).

### b. *Sanctions Phase*

■ The district court disallowed all fees requested in relation to the sanctions phase of the litigation except for those incurred by the City.[14] The court found that counsel to the individual defendants had been notified in advance that the City no longer believed there existed any conflict of interest precluding joint representation. Thus, the court allowed only $21,821.15 in total fees and costs for 188 out of over 1500 hours expended by all counsel representing defendants during the sanctions phase. Linder does not challenge the reasonableness of the

---

13. Although the district court did not describe their precise nature, Linder does not challenge its finding that there were potential conflicts of interest among the various individual defendants. Thus, Linder failed to demonstrate an abuse of discretion. *See Navarro–Ayala,* 968 F.2d at 1425.

14. The district court adjusted for the additional hearing time required on the section 1988 motion by allowing fees for only 50% of the total time expended by defendants' counsel at the sanctions hearing, a finding not challenged on appeal.

fees incurred by the City in the sanctions phase.[15]

We therefore affirm the district court judgement.

*Affirmed.*

15. Linder argues, however, apparently for the first time, that the district court abused its discretion by failing to take into account his financial ability to respond to the fee award. Even assuming this claim has been preserved, Linder presented no evidence concerning his financial condition, nor has he alleged financial inability to satisfy the sanction. Thus, there was no abuse of discretion. *See White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir.1990) ("[i]nability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status"), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

We likewise reject Linder's claim that attorney fees reasonably incurred in the sanctions phase may not be made the subject of a Rule 11 sanction. *See Brandt*, 960 F.2d at 651 (costs incurred in litigating request for Rule 11 sanctions in district court recoverable as part of Rule 11 sanction); *Robinson v. Dean Witter Reynolds, Inc.*, 129 F.R.D. 15, 22 (D.Mass.1989). *Cf. Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 949–50 (1st Cir.1984) (reasonable fees and costs incurred in recovering attorney's fees under § 1988 are reimbursable under § 1988).

Finally, although Linder argues that Rule 11 sanctions may chill civil rights actions, we cannot agree that a groundless civil rights action is any less appropriate a candidate for Rule 11 sanctions than other groundless actions.