Anne ANDERSON, et al.,
Plaintiffs, Appellants,

v.

BEATRICE FOODS CO.,
Defendant, Appellee.

No. 88–1070.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1990.

Decided March 26, 1990.

Opinion on Denial of Rehearing April 30,
1990.

**390**

Charles R. Nesson, Cambridge, Mass., with whom Jan Richard Schlichtmann and Schlichtmann, Conway, Crowley, & Hugo, were on brief, for plaintiffs, appellants.

Jerome P. Facher, with whom James L. Quarles III, Neil Jacobs, Richard L. Hoffman, and Hale and Door, Boston, Mass., were on brief, for defendant, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

The appeal before us represents yet another march in a litigatory trek of unusual length and complexity. We recount the case's by-now-familiar itinerary and thereafter proceed to blaze what few new trails remain.

I

The litigation concerns claims made by residents of the Aberjona River Valley in Woburn, Massachusetts. These residents contend that certain toxic chemicals in the city's water supply (the "complaint chemicals") caused a variety of ailments, including leukemia. Plaintiffs' search for the sources of contamination eventually focused upon a 15–acre parcel of vacant wetland lying west and southwest of two municipal water wells (designated "G" and "H"). To the southeast, across a set of railroad tracks, lay a tannery once operated independently by John J. Riley Company ("Rileyco") and later by Riley family members as a division of defendant-appellee Beatrice Foods Company ("Beatrice"). Plaintiffs sued Beatrice and others no longer before the court.

What ensued has been voluminously documented and memorialized at frequent intervals. *See, e.g., Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir.1988); *Anderson*

*v. Cryovac, Inc.,* 805 F.2d 1 (1st Cir.1986); *Anderson v. W.R. Grace & Co.,* 628 F.Supp. 1219 (D.Mass.1986); *Anderson v. Cryovac, Inc.,* 96 F.R.D. 431 (D.Mass. 1983). We begin our capsulated account by noting that, following drawn-out pretrial proceedings and a protracted jury trial, judgments were entered in Beatrice's favor. *See Anderson v. Cryovac, Inc.,* 862 F.2d at 914–15. Plaintiffs appealed. Later, while their appeal was pending, plaintiffs came to believe that grounds existed to set the judgments aside under Fed.R. Civ.P. 60(b)(3).[1] They requested such relief in the district court, asserting that a report prepared for Rileyco in 1983 by an independent consultant, Yankee Environmental Engineering and Research Services, was improperly (and prejudicially) withheld during pretrial discovery.[2] The district court denied the motion. Plaintiffs' appeal was consolidated with their original appeal.

Although we found the appeal on the merits to be unavailing, *see Anderson v. Cryovac, Inc.,* 862 F.2d at 915–22, we concluded that additional factfinding was requisite in order to decide the second appeal. Therefore, we retained jurisdiction over that appeal and remanded for a limited purpose:

> On remand, the court must first conduct an evidentiary hearing and determine whether appellee, acting alone or in concert with the Riley interests ..., knowingly or intentionally concealed the Report.... Depending on the outcome of this inquiry, a presumption of substantial interference will or will not arise.... In either event, the court should then proceed to receive an orderly presentation from all parties to decide whether the Report ... is inconsequential vis-a-vis the plaintiffs' claims insofar as they relate to the tannery property....

Fed.R.Civ.P. 60(b)(3).

---

**1.** The rule reads in material part:
On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

**2.** There were actually two reports, neither of which was produced. *See Anderson v. Cryovac, Inc.,* 862 F.2d at 922 n. 8. We refer to them collectively as "the Report."

... [T]he second-stage determination must be whether lack of access to the Report substantially interfered with plaintiffs' efforts to prepare and present a case as to the nexus between the tannery and the pollution of wells G and H.... Finally, the district court should formulate recommendations, based on its subsidiary findings, as to whether plaintiffs are in its view entitled to any remedy, and if so, the nature and scope thereof. The court shall also furnish us with a recommendation as to the appropriateness *vel non* of sanctions anent any unexcused discovery violations.

*Id.* at 932 (footnote omitted).

The district court tackled so thankless a task with incisiveness and vigor. After conducting extensive hearings during the first three months of 1989, Judge Skinner made an initial determination that the discovery infraction comprised deliberate misconduct as we had defined that term of art, *id.* at 925–26, thus entitling the plaintiffs to a rebuttable presumption that nondisclosure of the Report substantially impaired their preparation for trial, *id.* at 926, 930. The judge's findings in this regard were contained in a published rescript, *Anderson v. Beatrice Foods Co.*, 127 F.R.D. 1 (D.Mass.1989), and do not bear repeating.

The district court then commenced seven more days of hearings, ultimately concluding that, while the Report might have been marginally helpful to the plaintiffs in establishing the transport of chemicals from the tannery to the wells, there was no competent evidence that Beatrice disposed of the complaint chemicals at either the tannery site or on the 15–acre parcel. *Anderson v. Beatrice Foods Co.*, 129 F.R.D. 394 (D.Mass.1989). Thus, the initial presumption notwithstanding:

> Concealment of the Report ... did not constitute substantial interference with the preparation of a tannery case, where the essential predicate of such a case— use and disposal of the complaint chemicals by the defendant—was significantly negated by the evidence developed by the plaintiffs themselves in the course of pretrial investigation and discovery, and has never been otherwise established.

*Id.* at 402. The district court recommended that its earlier denial of the Rule 60(b)(3) motion be sustained. We ordered supplementary briefing, entertained oral argument, and now accept the lower court's recommendations in their entirety.

## II

The next leg of the journey can be accomplished with some expedition. Given the amount of time, energy, and resources which this litigation has consumed, and the number of pages heretofore written about it by various judges of various courts, we believe that an effort at (relative) brevity would be both a refreshing change and a decided virtue.

It is crystal clear that the district court read our opinion carefully, followed our instructions closely, and faithfully applied the principles which we elucidated. Although appellants assign error to the recommendations in a plethora of respects, their complaints anent the main issue reduce, essentially, to the thesis that the district court, having found that the Report would have been helpful in establishing the flowage of chemicals from the tannery to the wells, was required to find that nondisclosure worked a substantial interference with the full and fair preparation and presentation of appellants' case. Elaborating on the theme, plaintiffs contend that the court's finding as to lack of evidence on use and disposal of the chemicals was irrelevant to the claim that defendants violated Fed.R.Civ.P. Rule 60(b)(3). Put another way, plaintiffs argue that the district court went down a blind alley when it concentrated on the insufficiency of the disposal-related information that plaintiffs had thus far acquired. Proof of disposal, they say, was not the issue; rather, the court should have focused exclusively on the effect of the concealment: whether what plaintiffs failed to learn, due to Beatrice's misconduct, could have contributed significantly to preparation and presentation of their case. Although this was indeed the pivotal question, we do not share plaintiffs' stead-

fast belief that it can—or should—be wrenched out of the case's context.

■ The clearly erroneous standard governs our review of the finding that defendant's misconduct did not result in substantial interference with the preparation and presentation of plaintiffs' case. This means that:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *see also Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1019–20 (1st Cir.1988). Thus, "where the conclusions of the [trier] depend on its election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts, appellate courts should defer to such fact-intensive findings, absent clear error." *Irons v. FBI,* 811 F.2d 681, 684 (1st Cir.1987).

■ In this case, it was eminently reasonable to posit the strength or weakness of plaintiffs' evidence on disposal as an important factor bearing on the determination of whether nondisclosure amounted to a substantial interference. For the tannery site to be a source of actionable contamination, or for there to be a "nexus" between the tannery and the wells, *Anderson v. Cryovac, Inc.,* 862 F.2d at 932, it was incumbent upon plaintiffs first to prove that the tannery used, and disposed of, the complaint chemicals. The dearth of evidence on this point, coupled with the lack of any obvious connection between the Report and sources of knowledge as to tannery operations, seems a good indication that, even armed with the Report, plaintiffs would not have been able to prove the essential elements of a "tannery" case. The district court so found.

That finding, whether or not inevitable, was "plausible," that is, satisfactorily rooted in the record and completely consistent with common sense. A contrary finding—that the Report might have led to a more intense search for site-specific evidence, and that somehow, some way, such a search might have struck paydirt—would depend heavily on conjecture and surmise. To argue that the district court could have made these findings is one thing; to argue that the court was duty bound to embrace such speculation, and that its failure so to conclude was clear error, exemplifies a Barmecidal triumph of hope over reason.

Having perused the relevant portions of the record (no mean feat, considering its bulk), we are confident that the lower court's finding of "no substantial interference" derives adequate support from the evidence. That being so, we decline plaintiffs' invitation to substitute our collective judgment for that of the trier. Such an approach would not only make a mockery of "clear error" review, but would ignore the reality of events. In a long, complicated, factbound case like this one, the trial judge has a unique coign of vantage. Having presided during the seven year history of this case, throughout the discovery and pretrial proceedings, seventy-eight days of trial, three days of posttrial hearings on the Rule 60(b) motion, and at the protracted hearings following remand, he has gained an intimate familiarity with all the pieces of a labyrinthine puzzle and with how those pieces fit together. *See, e.g., Anderson v. Cryovac, Inc.,* 862 F.2d at 932 (directing that hearings after remand be held before Judge Skinner because of his "intimate knowledge of the case and [mastery of] its factual intricacies"). Appellate review of complex, fact-dominated issues cannot be allowed to descend to the level of Monday-morning quarterbacking.

In sum, the court below was correct in viewing its task as more than an exercise in theoretical abstraction and in considering the evidence on disposal. Its findings are sound, well substantiated, and free

from observable legal error.[3] Accordingly, we adopt the court's recommendations as to the (non)effect of defendant's deliberate misconduct. It follows that the road to recovery ends here. Plaintiffs' Rule 60(b)(3) motion was properly denied.

## III

Plaintiffs also contend that Beatrice should have been sanctioned and/or defaulted for deliberate misconduct amounting to "fraud upon the court." We find plaintiffs' hyperbole unconvincing and discern no reason to reject the district court's recommended disposition of this aspect of the case. We explain briefly.

The court below acknowledged that "[t]he discovery process is at the heart of federal trial practice," and that "deliberate interference with it is a matter ordinarily deserving of a significant sanction." *Anderson v. Beatrice*, 129 F.R.D. at 403. The court found, however, that both sides were guilty of sanctionable conduct: defendant by not disclosing the Report's existence, thereby failing forthrightly to meet its discovery obligations[4] (conduct which the court thought sanctionable under Fed. R.Civ.P. 37); plaintiffs by continued prosecution of the "disposal" claim after investigation and discovery had proven that there was no objective basis in fact for a case which posited defendant's dumping of complaint chemicals either at the tannery site or on the 15–acre parcel (conduct which the court thought sanctionable under Fed.R. Civ.P. 11).[5] In the court's estimation, neither party had clean hands, ergo, neither "should profit through sanctions from the delinquency of the other, and that should be the sanction for both of them." *Id.* at 404.

 It is axiomatic that, "[a]bsent abuse of discretion, we will not disturb a district court's choice of sanctions." *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1081 (1st Cir.1989). This deferential standard applies to sanctions in the discovery milieu. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); *Fashion House*, 892 F.2d at 1081; *Farm Constr. Services, Inc. v. Fudge*, 831 F.2d 18, 20 (1st Cir.1987). It also applies under Rule 11. *See Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1022 (1st Cir.), *cert. denied,* ―― U.S. ――, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *EBI Inc. v. Gator Indus., Inc.*, 807 F.2d 1, 6 (1st Cir.1986). Because the imposition of sanctions is peculiarly within the province of the court in which the challenged conduct occurs, a party complaining to an appellate tribunal in respect to trial-level sanctions "bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering [the] order." *Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535, 537 (1st Cir.1988).

The rule is anchored in common sense. "District judges live in the trenches ... [and] ... are, by and large, in a far better position than appellate tribunals to determine the presence of misconduct and to prescribe concinnous remedies." *Fashion House*, 892 F.2d at 1082 (reviewing imposition and choice of sanctions for discovery misconduct); *see also Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 419 (1st Cir.1989) (decision whether to assess Rule 11 sanctions primarily for trial court, which has "tasted the flavor of the litigation") (quoting *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 603 (1st Cir.1988)). As this situation aptly illustrates, decisions as to whether sanctions should be imposed, and if so, what form they should take, often require intensive inquiry into the circumstances surrounding an alleged viola-

---

**3.** Plaintiffs' allegation that the court failed to conduct a sufficiently thorough and aggressive inquiry can best be described as chimerical. We believe that the record so emphatically refutes the allegation that substantive comment on our part would be supererogatory.

**4.** In our earlier opinion, we explained why and how Beatrice's actions in this regard constituted an improper failure to make discovery. *Anderson v. Cryovac, Inc.*, 862 F.2d at 927–29.

**5.** The district court also referred to 28 U.S.C. § 1927. *Anderson v. Beatrice*, 129 F.R.D. at 403–04. But, this reference adds nothing to the mix. Therefore, we discuss the topic of plaintiffs' derelictions solely in terms of Rule 11.

tion. The trial judge, steeped in the facts and sensitive to the interplay amongst the protagonists, is ideally equipped to review those ramifications and render an informed judgment. *See Kale v. Combined Ins. Co.,* 861 F.2d 746, 758 (1st Cir.1988); *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 873 (5th Cir.1988). After all, the imposition of sanctions is essentially "a judgment call," *FDIC v. Tekfen Constr. and Installation Co.,* 847 F.2d 440, 443 (7th Cir.1988); and as such, seems best left to the judicial officer most familiar with the case, the parties, and the attorneys. *See Kale,* 861 F.2d at 758; *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir.1987). Accordingly, we treat the district court's recommendation on sanctions in this case as we would treat a sanctions order, reviewable only for abuse of discretion.

We have recently restated the test for such review:

> Abuse [of discretion] occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Fashion House,* 892 F.2d at 1081; *see also Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988). Here, our examination of the papers persuades us that the lower court weighed all proper and no improper factors in dealing with sanctions. Nor can we conclude, in the extraordinary circumstances of this extraordinary litigation, that the court made a "serious mistake" in balancing the scales by imposing somewhat unconventional remedial measures on the derelict parties.

■ Sanctions come in a wide variety of guises. The trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular

episode or pattern of errant conduct. So long as the sanction selected is "appropriate," Fed.R.Civ.P. 11, the Civil Rules place virtually no limits on judicial creativity.[6] *See, e.g.,* Rule 11, advisory committee's note, 1983 amendments (trial court "retains the necessary flexibility to deal appropriately with violations of the rule.... [and] has discretion to tailor sanctions to the particular facts of the case"); Fed.R.Civ.P. 37(d) advisory committee's note, 1970 amendments (acknowledging change in rule's language "to provide the greater flexibility as to sanctions which the cases show is needed"); *see also* G. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* § 16, at 217 (1989); *Cheek v. Doe,* 828 F.2d 395, 397 (7th Cir.), *cert. denied,* 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987); *Donaldson v. Clark,* 819 F.2d 1551, 1557 (11th Cir.1987); *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157–58 (3d Cir. 1986).

■ The appropriateness of a particular sanction is primarily a function of two variables: the facts presented and the court's purpose in penalizing the errant party. Sanctions, under both Rules 11 and 37, serve dual purposes of deterrence and compensation. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781; *Brown v. Federation of State Medical Bds.,* 830 F.2d 1429, 1437–38 (7th Cir.1987); *Donaldson,* 819 F.2d at 1556; *Oliveri v. Thompson,* 803 F.2d 1265, 1281 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 12 (1st Cir. 1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986); *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1179 (D.C.Cir.1985). As a deterrent, sanctions speak largely to systemic concerns.

---

**6.** We think it noteworthy that Rule 11, while requiring the court to impose "an appropriate sanction" for an infraction of the rule's standard, neither defines nor delimits the types of sanctions that may be "appropriate." Rule 37, which applies generally to a party's failure to make proper discovery, does list some possible sanctions, but the listing is not comprehensive; the rule's operative principle is that the district court "may make such orders in regard to the failure as are just...." Fed.R.Civ.P. 37(d). The elasticity of the Civil Rules is in our view not accidental.

Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders. In this sense, sanctions may be a useful tool in vindicating the court's authority, reminding those who need reminding of the protocol, and ensuring orderliness in the judicial process. As compensation, sanctions recognize that a litigant's failure to abide court orders and rules, or his disregard of obligations inherent in the conduct of litigation, harm not only the system but the other participants in the process. Sanctions, then, can have a contrapuntal effect, adjusting the scales so that the extra time, effort, and expense to party "A" which occurs in consequence of the dereliction of party "B" can be repaid in some equitable fashion.

■ In general, a trial court confronted by sanctionable behavior should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose. *See Thomas*, 836 F.2d at 878; *Brown*, 830 F.2d at 1437; *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). While we eschew the imposition of rigid guidelines for the trial courts in this circumstance-specific area of the law, the judge should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime. Nevertheless, whichever purpose is to be served—and often, sanctions are designed to serve some combination of the two prime purposes—the trial court's discretion in fashioning sanctions is broad. *See National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780; *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986); *Albright v. UpJohn Co.*, 788 F.2d 1217, 1222 (6th Cir.1986); *Brockton Sav. Bank*, 771 F.2d at 10; G. Joseph, *Sanctions, supra*, § 2, at 15.

■ In this case, the district court determined, supportably in our view, that both sides were guilty of sanctionable conduct. The court estimated that the monetary losses suffered by the respective "victims" was nearly the same, that is to say, Beatrice's Rule 37 misconduct cost plaintiffs about the same, in terms of counsel fees and expenses, as plaintiffs' Rule 11 misconduct cost Beatrice. The court decreed that neither side should be permitted to recoup its losses. That, in itself, was a sanction: Beatrice was sanctioned by declaring forfeit the sum it would have been awarded in consequence of plaintiffs' Rule 11 violation, and vice versa. There is, then, no merit to plaintiffs' claim that appellee was allowed to go scot-free, without any sanction being imposed for its discovery misconduct.

■ In our view, by electing in effect to fine each litigant in the amount it stood to gain through the other's violation, the judge adequately addressed the interests of both deterrence and compensation. To be sure, there is a certain inexactitude about the broad assumption that the parties' malefactions were equally culpable and equally costly. But, given the necessarily problematic nature of the inquiry, we cannot say that the court's resort to rough equivalencies represents the sort of "serious mistake," *Fashion House*, 892 F.2d at 1081, necessary to constitute an abuse of discretion. *Compare, e.g., Hazen v. Pasley*, 768 F.2d 226, 229 (8th Cir.1985) (where district court denied discovery sanctions, court of appeals will not reverse absent clear abuse of discretion); *Craig v. Far West Eng. Co.*, 265 F.2d 251, 262 (9th Cir.) (district court's discretion not abused by court's refusal to sanction noncompliant party for breach of discovery obligations), *cert. denied*, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959).

■ We are equally unpersuaded by plaintiffs' suggestion that concealment of the Report should have triggered an entry of default. The argument is keyed to the notion that defendant's misconduct constituted fraud on the court. We recently wrote:

A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presenta-

tion of the opposing party's claim or defense.

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989).

There was no fraud here. The district court so found, explicitly, *see Anderson v. Beatrice Foods Co.*, 127 F.R.D. at 1 (court "found no evidence of fraud"), and implicitly—its finding of "deliberate misconduct," *id.* at 6, negated a finding of fraud. *See generally* Fed.R.Civ.P. 60(b)(3) (distinguishing among "fraud," "misrepresentation," and "other misconduct"); *Anderson v. Cryovac, Inc.*, 862 F.2d at 923 (differentiating between "misconduct" and "fraud"). Although discovery misconduct could, perhaps, sink to the level of fraud on the court, not every instance of such misconduct so qualifies. While we neither condone what transpired in this case nor minimize its gravity, we think that the district court acted within its discretion in determining that defendant's dereliction, albeit sanctionable, did not constitute "gross misbehavior," *Aoude*, 892 F.2d at 1119, of the sort which required, as a matter of law, that the sternest of available sanctions be imposed.[7]

### IV

This long safari of a case may at last be brought to a conclusion. We do not believe that the district court's recommendation as to the effect (or, more properly phrased, the lack of effect) of the nondisclosure was clearly erroneous or infiltrated by mistake of law. We have considered each and all of the objections which plaintiffs have raised to the main recommendation and find them unavailing.[8] Lastly, mindful of the district court's involvement in, and intimate familiarity with, the checkered history and inner workings of this convoluted case, the sanctions recommendation commands our respect.

We need go no further. We accept the suggestions of the district court and, premised thereon, uphold the denial of appellant's Rule 60(b)(3) motion and the court's eschewal of sanctions beyond those inherent in leaving the parties in the beds they had made. The judgment and order appealed from are, therefore,

*Affirmed. No costs.*

### OPINION ON REHEARING

▆▆▆▆ Appellants' petition for rehearing is denied. In the main, the petition rehashes arguments made to, and rejected by, the panel in our earlier opinion, and to that extent requires no comment.

Appellants do add a new wrinkle. They claim that because the district court, acting sua sponte, simultaneously alleged a Rule 11 violation, found that such a violation had occurred, and imposed a sanction without giving appellants notice or opportunity to respond, the district court's actions do not comport with due process. This asseveration is severely flawed.

The district court did not *impose* a sanction; it merely made a recommendation that we do so. *See, e.g.,* Op. at 393 (discussing "the district court's recommended disposition" of the sanctions issue); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 932 (1st Cir.1988) (remanding for, inter alia, district court's recommendations as to appropriateness of sanctions). Appellants had ample notice of the recommendation, briefed it extensively, and were fully heard before we adopted it. To be sure, our standard of review was deferential, *see* Op. at 394—but this does not obviate the fact that due process concerns seem to have been amply satisfied.

---

7. Indeed, we, ourselves, adumbrated the likelihood of some milder sanction. *See Anderson v. Cryovac, Inc.*, 862 F.2d at 924 n. 11 (if misconduct is sanctionable but its aftermath benign, default or dismissal need not automatically follow; "[t]here is not always a need to ditch the baby with the bath water.").

8. Several of plaintiffs' objections do not warrant, and have not received, extended comment. It suffices to say that we have considered and rejected them. We have also surveyed the district court's rulings on remand in respect to various motions and evidentiary points which drew plaintiffs' fire in their supplementary brief. We are equally unpersuaded that any of these rulings constituted reversible error.

We need not definitively resolve the point, however, because appellants have forfeited any right to voice it. They did not make the due process claim below. They did not make it in the supplemental briefing before us. They did not make it at oral argument. We have routinely held that (1) a suitor's first obligation, on pain of waiver, is "to seek any relief that might fairly have been thought available in the district court before seeking it on appeal," *Beaulieu v. United States Internal Revenue Service*, 865 F.2d 1351, 1352 (1st Cir. 1989); and (2) that an appellant's brief on appeal fixes "the scope of issues appealed" so that an appellant cannot resurrect an omitted claim "merely by referring to it in a reply brief or at oral argument," *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983). A fortiori, a party cannot be permitted to raise a new issue for the first time on a petition for rehearing in the court of appeals.

The petition for panel rehearing is *denied.*