March 31, 1994
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1720

RICHARD SILVA, ET AL.,

Plaintiffs, Appellees,

v.

PETER WITSCHEN, CITY OF EAST PROVIDENCE, ET AL.,

Defendants, Appellees,

STEPHEN LINDER,

Appellant.

ERRATA

The opinion of this Court issued on March 24, 1994, is amended as
follows:

On Page 13, Paragraph 2 on Line 3, please insert "sanction" after
"Rule 11".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1720

RICHARD SILVA, ET AL.,

Plaintiffs, Appellees,

v.

PETER WITSCHEN, CITY OF EAST PROVIDENCE, ET AL.,

Defendants, Appellees,

STEPHEN LINDER,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Cyr and Stahl,

Circuit Judges.

Edward Greer, Rhode Island Affiliate, American Civil Liberties

Union, was on brief for appellant.

William J. Conley, Jr., City Solicitor, for appellee City of East

Providence, Rhode Island.

March 24, 1994

CYR, Circuit Judge. Appellant Stephen Linder, Esquire,
CYR, Circuit Judge.

challenges the sanction imposed against him pursuant to Fed. R.

Civ. P. 11 for filing a groundless complaint against defendants-

appellees. After careful review, we affirm the district court

sanction order in all respects.

I

BACKGROUND

In the fall of 1985, the City of East Providence, Rhode

Island, announced that an independent testing service would

administer a competitive examination for the position of Chief of

Police. A city ordinance empowered the City Manager, defendant-

appellee Peter Witschen, to fill the position from among the top

three performers on the examination. See Civil Service Ordinance

of East Providence, R.I. 11-66(c),(d). It was no secret that

some members of the City Council, including defendants-appellees

in this action, favored the appointment of defendant Anthony

DeCastro. DeCastro achieved the highest examination score and,

in January 1986, was appointed by the City Manager.

Following the appointment, a rift arose between Chief

DeCastro and the Fraternal Order of Police Union (Union). At a

public session of the City Council years later, it was disclosed

that several defendants had discussed beforehand with DeCastro

the likelihood that a competitive examination would be adminis-

tered and that DeCastro's test-taking skills were weak. Finally,

it was also disclosed at the City Council meeting that DeCastro

2

had attended a preparatory course in "executive development" on

his own time, for which he was reimbursed pursuant to a City

policy permitting reimbursement for "in-service training."

Present at the City Council meeting were several of the

plaintiffs, all disappointed applicants for the position, and

appellant Linder, counsel to the Union. Shortly after the City

Council meeting, two of the plaintiffs met briefly with Linder

and discussed factual grounds for a possible lawsuit in their

behalf. Thereafter, Linder conducted limited discussions with

other plaintiffs along similar lines.

On January 3, 1990, Linder initiated the present action

under 42 U.S.C. 1983 in the United States District Court for

the District of Rhode Island, charging deprivations of plaintiff-

s' due process right to a fair and impartial promotional examina-

tion as provided by the City ordinance, and of an alleged right

of "equal protection" to compete for the position. Although the

complaint pleaded relevant circumstances which the district court

later characterized as "suspicious," see supra pp. 2-3, it

neither alleged nor asserted facts sufficient to support an

inference that the examination was either "rigged" to favor

DeCastro or administered or graded unfairly.

Prior to filing the complaint, Linder made a copy

available to the City Solicitor, who advised Linder that it was

"unjustified," and warned that the City was likely to demand

attorney fees for defending against it. Linder was not deterred.

Ultimately, the district court entered summary judgment

3

for all defendants on the ground that "the complaint made no

allegations of 'exam rigging,'" which was the essence of plain-

tiffs' claim. Silva v. Witschen, 745 F. Supp. 798, 803 (D. R.I.

1990).1 The defendants thereafter requested attorney fees,

either under 42 U.S.C. 1988 or as a sanction under Fed. R. Civ.

P. 11.

In due course, the district court conducted a lengthy

hearing to determine whether the fee request should be allowed on

either ground. The amount of any fee award was not before the

court at the hearing. Following the hearing, the court denied

the request for an award under section 1988, on the ground that

the plaintiffs had not acted in bad faith. The court found,

however, that Linder was subject to sanction under Rule 11 for

filing a groundless complaint. The defendants later requested

fees and costs totalling almost $250,000, which the court reduced

to $75,349.96, approximately two-thirds of which was attributed

to the merits phase and one-third to the sanctions phase of the

district court litigation.

II

DISCUSSION

All aspects of the Rule 11 sanctions decision are

reviewed for abuse of discretion. Cooter & Gell v. Hartmarx

Corp., 496 U.S. 384, 405 (1990); Metrocorps, Inc. v. Eastern

Mass. Junior Drum & Bugle Corps Ass'n, 912 F.2d 1, 2 (1st Cir.

1The judgment on the merits is not challenged on appeal.

4

1990). As the party challenging the sanctions award, Linder

bears the formidable burden of establishing abuse of discretion.

See Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992).

An abuse of discretion occurs only if "'a material factor deserv-

ing significant weight is ignored, . . . an improper factor is

relied upon, or . . . all proper and no improper factors are

assessed, but the court makes a serious mistake in weighing

them.'" Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st

Cir.) (quoting Fashion House, Inc. v. K Mart Corp., 892 F.2d

1076, 1081 (1st Cir. 1989)), cert. denied, 498 U.S. 891 (1990).

A. Amended Rule 11

On December 1, 1993, during the pendency of the present

appeal, an amended version of Rule 11 became effective, governing

"all proceedings in civil cases thereafter commenced and, insofar

as just and practicable, all proceedings in civil cases then

pending." Order Amending Federal Rules of Civil Procedure, 113

S. Ct. CDLXXVIII (Apr. 22, 1993) (emphasis added).2 Linder

2The sanctions provision in the pre-amendment version of
Rule 11 stated:

If a pleading, motion, or other paper is signed in
violation of this rule, the court, upon motion or upon
its own initiative, shall impose upon the person who

signed it, a represented party, or both, an appropriate
sanction, which may include an order to pay to the
other party or parties the amount of the reasonable
expenses incurred because of the filing of the plead-
ing, motion, or other paper, including a reasonable
attorney's fee.

Fed. R. Civ. P. 11 (1987) (emphasis added).

The relevant portion of the sanctions provision in the

5

therefore contends that amended Rule 11 applies on appeal in the

present case.

We need not decide whether a case pending on appeal

December 1, 1993 is subject to the amended rule. The promulga-

tion order precludes application of the amended rule even in

amended version reads as follows:

(c) Sanctions. If, after notice and a reasonable
Sanctions
opportunity to respond, the court determines that
subdivision (b) [Representations to Court] has been
violated, the court may, subject to the conditions

stated below, impose an appropriate sanction upon the
attorneys, law firms, or parties that have violated
subdivision (b) or are responsible for the violation.

(1) How Initiated.
How Initiated

(a) By Motion. A motion for sanctions under
By Motion

this rule . . . shall describe the specific con-
duct alleged to violate subdivision (b). It shall
be served as provided in Rule 5, but shall not be

filed with or presented to the court unless, with-

in 21 days after service of the motion (or such

other period as the court may prescribe), the

challenged paper, claim, defense, contention,

allegation, or denial is not withdrawn or appro-

priately corrected. If warranted, the court may

award to the part prevailing on the motion the
reasonable expenses and attorney's fees incurred
in presenting or opposing the motion.

(2) Nature of Sanction; Limitations. A sanction
Nature of Sanction; Limitations.

imposed for violation of this rule shall be limit-
ed to what is sufficient to deter repetition of
such conduct or comparable conduct by others simi-
larly situated. . . . [T]he sanction may consist
of, or include, directives of a nonmonetary na-
ture, an order to pay a penalty into court, or, if
imposed on motion and warranted for effective
deterrence, an order directing payment to the
movant of some or all of the reasonable attorneys'
fees and other expenses incurred as a direct re-
sult of the violation.

Fed. R. Civ. P. 11 (Dec. 1, 1993) (emphasis added).

6

"cases then pending" insofar as it would be unjust or imprac-

ticable to do so. Id. To remand for a district court determina-

tion under amended Rule 11 in these circumstances is not only

infeasible but would work an injustice to plaintiffs-appellees.

See Hashemi v. Campaigner Publications, Inc., 784 F.2d 1581, 1584

(11th Cir. 1986) (finding no reason to test Rule 11 sanctions

under amendment to 1983 rule not in effect when sanctioned

conduct occurred) (decided under virtually identical terms of

1983 promulgation order: "shall govern . . . , insofar as just

and practicable, in proceedings then pending." Order Amending

Rules of Civil Procedure, 461 U.S. 1097 (1983)). Cf. Freund v.

Fleetwood Enters., Inc., 956 F.2d 354, 363 (1st Cir. 1992)

(declining to apply amended Fed. R. Civ. P. 15(c) which would

work "manifest injustice");3 Agretti v. ANR Freight Sys., Inc.,

No. 89 C 5492, 1994 WL 46670, at *1 (N.D. Ill. Feb. 14, 1994)

(finding retrospective application of 1993 amended Rule 11

"neither just nor practicable"); In re Taxable Mun. Bond Sec.

Litig., No. MDL 863, 1994 WL 34924, at *4 (E.D. La. Feb. 3, 1994)

3Freund rests upon the principle that "a court is to apply

the law in effect at the time it renders its decision, unless
doing so would result in manifest injustice or there is statutory
direction or legislative history to the contrary." Bradley v.

Richmond Sch. Bd., 416 U.S. 696, 711 (1974). In the instant

case, such "statutory direction" derives from the Supreme Court's
power to prescribe rules of procedure. See generally 28 U.S.C.

2071-2113. Section 2074(a) of Title 28 states that "the
Supreme Court shall not require the application of such [amended]
rule to further proceedings then pending to the extent that, in

the opinion of the court in which such proceedings are pending,

the application of such rule in such proceedings would not be
feasible or would work injustice, in which event the former rule
applies." 28 U.S.C. 2074(a) (emphasis added).

7

(declining to apply 1993 amended rule where sanctioned conduct

occurred prior to Dec. 1, 1993 and pre-amendment standards had

been applied at sanctions hearing).4 This is particularly true

since Linder's sanctionable conduct was solely responsible for

the satellite proceedings relating to Rule 11 sanctions. More-

over, it would be impracticable, not only to undo the harm

actually occasioned defendants, but to review the district court

order under the altered standards established by amended Rule

4Linder argues that he would not have been sanctioned under
the amended rule, because he would have withdrawn the complaint
as allowed under the 21-day "safe harbor" provision. See Fed. R.

Civ. P. 11(c)(1)(A) (Dec. 1, 1993); supra note 2. Linder cannot

have it both ways, however. His argument is based on the assump-
tion that he would have availed himself of a "safe harbor"
provision had he received notice of the particular deficiencies

in the complaint. This retrospective appraisal ignores the
reality that Linder flatly disregarded a substantially equivalent
warning from the City Solicitor before the complaint was ever
filed. See supra p. 3-4. Thus, Linder's argument cannot prevail

unless appellees failed to point out particular deficiencies in
the complaint. However, appellees' statement of relevant facts
on appeal represents, and Linder does not deny, that the City
Solicitor "informed [Linder] of the pleading deficiencies, and of

the City's probable attempt to collect sanctions, before the
pleading was even filed." (Appellees' Br. at 16) (emphasis
added). Since Linder neither denies appellees' representation
nor included the relevant portions of the hearing transcript to
which appellees' statement of facts cites, see Fed. R. App. P.

10(b), 11(a) (appellant bears burden of including material items
in appellate record), we will not indulge an assumption fore-
closed by the record before us. It would be unjust to permit yet
a second "safe harbor" refuge for Linder to escape responsibility

for the expense occasioned an innocent party which forewarned him
that the complaint was unjustified. Furthermore, even if the
cost and expense occasioned by Linder's sanctionable conduct were
to be disregarded, it would be unjust to permit these satellite
proceedings to be further extended by remanding to the district
court to afford Linder the opportunity to "withdraw" a groundless
complaint previously dismissed on the merits.

8

11.5 See Hashemi, 784 F.2d at 1583-84 (rejecting claim, under

virtually identical 1983 promulgation order, that amended Rule 11

standards should apply "because the case was pending on appeal by

the plaintiff at the time the Rule became effective"); cf.

Freund, 956 F.2d at 363 (refusing to apply amended rule which

would work "manifest injustice"). Since an unwarranted remand

would otherwise be necessary in these already protracted satel-

lite proceedings, at inordinate delay and expense to innocent

parties, we review the district court sanction order under the

pre-amendment Rule 11 standards in force at the time the sanc-

tioned conduct occurred.

B. Appropriateness of Rule 11 Sanctions

Prior to December 1, 1993, Rule 11 mandated sanctions

for interposing a filing either for an improper purpose or under

5For example, deterrence was the primary purpose served by
Rule 11 sanctions prior to December 1, 1983. See Cooter & Gell,

496 U.S. at 393. Yet "courts . . . ha[d] noted that compensatory
and punitive purposes also [we]re served by sanctions [under old
Rule 11]." Charles A. Wright & Arthur Miller, 5A Federal Prac-

tice and Procedure 1336 at 100-101 (1990); Anderson, 900 F.2d

at 394-95. Under amended Rule 11, however, "the purpose of . . .
sanctions is to deter rather than to compensate . . . ." Fed. R.

Civ. P. 11 advisory committee's note (emphasis added). Thus,
under amended Rule 11, "if a monetary sanction is imposed, it
should ordinarily be paid into court as a penalty," id., though

the court may award monetary sanctions to a party in "unusual
circumstances," id. Although sanctions were mandatory under old

Rule 11, Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir. 1990), but

are discretionary under the amended rule, Fed. R. Civ. P. 11(c)
(Dec. 1, 1993) (if court finds a violation, "the court may . . .

impose an appropriate sanction" (emphasis added)), in these
circumstances we believe it would be a gross injustice to deprive
defendants-appellees of compensation for the costs caused by
Linder's reckless disregard for the requirements of Rule 11
despite the City's advance warning.

9

circumstances in which a competent attorney, on objectively

reasonable inquiry, could not have believed that the filing was

grounded in fact and warranted either by existing law or by a

good-faith argument for the extension, modification or reversal

of existing law. Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir.

1990).

1. Legal Basis for Action

Linder "concedes" that the complaint violated Rule 11,

in that he failed to make the objectively reasonable legal

inquiry required under our case law. He argues, however, that

Leatherman v. Tarrant County Narcotics Intelligence and Coordina-

tion Unit, U.S. , 113 S. Ct. 1160 (1993), struck down the

heightened pleading requirement previously espoused by this court

in section 1983 actions.6 Since Leatherman should be given

retroactive effect, see Harper v. Virginia Dep't of Taxation,

U.S. , , 113 S. Ct. 2510, 2516-17 (1993) (general rule of

retroactivity in civil cases), Linder contends that sanctions

were improperly imposed. This argument is a red herring.

The district court order neither mentioned nor applied

a heightened pleading standard, nor did it cite to any case

involving a heightened pleading requirement. See Silva, 745 F.

Supp. at 801. Rather, the court determined that there was no

6In Leatherman, the Court rejected the Fifth Circuit's "more

demanding rule for pleading a complaint under section 1983 than
for pleading other kinds of claims for relief." 113 S. Ct. at
1162-63.

10

legal basis whatever for Linder's reliance on a federally pro-

tected property interest, in principal part because plaintiffs

made no allegation of "exam-rigging." See Burns v. Sullivan, 619

F.2d 99, 104 (1st Cir.), cert. denied, 449 U.S. 893 (1980).7

Compare Silva, 745 F. Supp. at 803, with Hermes v. Hein, 511 F.

Supp. 123, 125 (N.D. Ill. 1980) (complaint alleging exam-rigging

states 1983 claim in circumstances where unwavering custom and

policy is to promote applicant achieving highest score). The

court concluded that the only protected property interest at

issue was plaintiffs' due process right to compete fairly for the

position of Chief of Police,8 and since they had alleged no

facts evidencing such a deprivation the action was groundless as

a matter of law. Silva, 745 F. Supp. at 805. Neither before the

district court, nor on appeal, has Linder raised doubt as to the

soundness of the district court ruling that the complaint failed

to state a cause of action.

7As the district court observed:

Like the City Manager in Burns, City Manager Witschen

had discretion to make an appointment "after interview
and investigation," from among "the names of the three
persons standing highest on the appropriate list."
Since the City Manager could appoint any one of the top
three certified candidates, none of these candidates
had a clearly defined property interest in promotion to
Chief of Police.

Silva, 745 F. Supp. at 803.

8The court rejected the claim that plaintiffs were deprived
of "equal protection" by the dissimilar treatment accorded
DeCastro, citing Di Piro v. Taft, 584 F.2d 1, 3 (1st Cir. 1978),

cert. denied, 440 U.S. 914 (1979). See Silva, 745 F. Supp. at

805 (finding no evidence of intentional discrimination).

11

2. Improper Purpose

The district court further found that Linder attempted

by bringing the present action to intimidate "the City into

terminating DeCastro . . . . [thus] using this case to further an

improper objective." Silva v. Witschen, C.A. No. 90-0005L, slip

op. at 18-19 (D. R.I. Nov. 5, 1992) (order imposing sanctions).

Although Linder admits to a "dual motive," he argues that Rule 11

sanctions may not be imposed for commencing an action for an

"improper purpose" if there was also a proper motive, in this

case vindicating plaintiffs' rights. The district court found

that

Linder, who was also the attorney for the
Union, was wearing two hats here. Although
he purported to represent the plaintiffs in
this case, all his actions were calculated to

achieve the goal of the Union, the ouster of

DeCastro. While plaintiffs honestly believed
in their cause of action, Linder was using
their lawsuit as a bargaining chip to pres-
sure the City on behalf of the Union to ter-
minate DeCastro as Chief of Police.

Id. at 19 (emphasis added).

Linder's contention that his conduct is not sanctiona-

ble because he intended to protect plaintiffs' legal rights is

yet another red herring. We are aware of no authority or other

basis for the view that an attorney who files a groundless

complaint, for an improper purpose and without reasonable inqui-

ry, see Fed. R. Civ. P. 11, is exonerated from sanctions because

he was simply asserting groundless nonexistent legal claims in

behalf of his clients. Cf. Lieb v. Topstone Indus., Inc., 788

F.2d 151, 157 (3d Cir. 1986) ("[P]leader may not escape liability

12

because he did not intend to bring about additional delay or

expense. If reasonable preparatory steps would have avoided

those consequences, sanctions are appropriate."). Accordingly,

we uphold the district court finding of improper motive. Cf. Mir

v. Little Co. of Mary Hosp., 844 F.2d 646, 653 (9th Cir. 1988)

(using litigation to force party to grant privileges previously

denied is "improper purpose").

C. Appropriateness, Nature and Severity of Sanctions

1. Rule 11 Hearing

The procedure for determining whether a sanction should be

imposed and, if so, its nature and severity, is left in the first

instance to the trial court's sound discretion. Linder contends

that the district court abused its discretion, see Cooter & Gell,

496 U.S. at 405, by unnecessarily convening a hearing on the

request for Rule 11 sanctions. See also Fed. R. Civ. P. 11

advisory committee's note (sanctions procedure depends on circum-

stances and severity of sanction under consideration); Muthig v.

Brant Point Nantucket, Inc., 838 F.2d 600, 607 (1st Cir. 1988)

(similar). He argues that there was no reason to conduct a Rule

11 hearing once the court found no legal basis for the complaint,

see Silva, 745 F. Supp. at 803, since sanctions were mandatory

under the pre-amendment version of Rule 11, Jensen v. Frank, 912

F.2d 517, 524 n.6 (1st Cir. 1990).

Linder once again mischaracterizes the proceedings

below. The grant of summary judgment against plaintiffs did not

preordain the imposition of any Rule 11 sanction against Linder.

13

Rather, the hearing was necessary to determine whether Linder had

violated Rule 11 and, if so, to determine an appropriate sanc-

tion. Additionally, defendants requested a fee award against

plaintiffs under 42 U.S.C. 1988 as well, which the court consi-

dered at the same hearing and later denied. The claim that the

district court abused its discretion by conducting a hearing to

resolve defendants' fee requests under Rule 11 and section 1988

is frivolous.

Linder has fallen far short of a showing of abuse of

discretion.9 Rule 11 contemplates "giv[ing] effect to [its]

central goal of deterrence," Cooter & Gell, 496 U.S. at 405,

while avoiding unnecessary satellite litigation; the proper

balance is left to the reasoned discretion of the district court,

id. Cf. Fashion House, 892 F.2d at 1082 (district court is in

best position to determine appropriate remedy). The hearing was

necessary for two reasons: to determine whether there was a

proper basis for assessing attorney fees against plaintiffs under

42 U.S.C. 1988, and whether Linder's filing of the groundless

complaint warranted imposition of a Rule 11 sanction. Silva,

slip op. at 2-3 (Nov. 5, 1992); Silva, 745 F. Supp. at 806.

Thus, among the matters at issue in the Rule 11 sanctions hearing

9Though hampered by the absence of a sanction-hearing tran-
script, we have reviewed Linder's claims on the available appel-
late record, see United States v. One Yacht Named Mercury, 527

F.2d 1112, 1113 (1st Cir. 1975) (despite incomplete record,
appellate court reviews merits as record allows), cognizant that
it was Linder's burden to ensure an adequate appellate record,
see Navarro-Ayala, 968 F.2d at 1425; see also Fed. R. App. P.

10(b), 11(a) (requiring appellant to assemble requisite record).

14

were whether Linder: (1) brought the action for an improper

purpose and (2) after reasonable inquiry, could have formed a

reasonable belief that the complaint was well grounded in fact

and "warranted by existing law or a good faith argument for the

extension, modification, or reversal of existing law." Fed. R.

Civ. P. 11 (1987); see Lancellotti, 909 F.2d at 19. The court

found that "Linder failed to make a reasonable inquiry to deter-

mine that the complaint was well founded in fact . . . [and] even

more important [the] lawsuit was baseless as a matter of law."

Silva, slip op. at 17 (Nov. 5, 1992). See Unanue-Casal v.

Unanue-Casal, 898 F.2d 839, 841-42 (1st Cir. 1990) (Rule 11

sanctions against counsel warranted for filing frivolous removal

petition with "no plausible legal basis" and for "improper

purpose").10

2. Reasonableness of Sanctions

Linder's remaining claim is that the attorney fee award

is excessive. Compensatory sanctions under Rule 11 must be

10Linder claims that the district court did not need to
address the "improper purpose" prong of Rule 11 once it had been
determined that he had failed to make a "reasonable inquiry." We
find no abuse of discretion. The appellate record provided by
Linder, see supra note 9, does not indicate which issue was first

decided, why the hearing proceeded to the second issue, or even
whether Linder preserved this claim by asserting it in timely
fashion below. Moreover, the further inquiries as to the appro-
priateness and severity of Rule 11 sanctions were significantly
informed by the court's determination that not one but two
grounds existed for sanctioning Linder. See Unanue-Casal, 898

F.2d at 841-42 (Rule 11 sanctions against counsel warranted by
both prongs of rule).

15

reasonable in amount.11 Navarro-Ayala, 968 F.2d at 1427 (cit-

ing cases).

a. Merits Phase

The district court awarded the City12 $53,528.81 in

attorney fees and costs incurred during the merits phase of the

litigation by all defendants, representing approximately 487

hours devoted to legal services by counsel appearing for the five

individual defendants, and by the City Solicitor in behalf of the

City and the same five individual defendants in their official

capacities. Linder does not challenge the individual fee appli-

cations, but asserts that the aggregate hours were not reasonably

required because defendants did not take proper measures to

mitigate fees by delegating jointly-required in-court services

and submitting unitary filings to avoid unnecessary duplication

of services. See Navarro-Ayala, 968 F.2d at 1427 (compensatory

sanctions allowed only for costs reasonably incurred) citing

Thomas v. Capital Sec. Services, Inc., 836 F.2d 866, 879 (5th

Cir. 1988); see also Dubisky v. Owens, 849 F.2d 1034, 1037 (7th

11Another Linder claim that attorney fees are not allow-
able under Rule 11 directly contradicts the express language
of Fed. R. Civ. P. 11 ("an appropriate sanction . . . may include
. . . a reasonable attorney's fee"). See also Mariani v. Doctors

Assocs., Inc., 983 F.2d 5, 8 (1st Cir. 1993); see generally

Charles A. Wright & Arthur R. Miller, 5A Federal Practice &

Procedure, 1336 at 113 (1990) ("attorneys' fees have become the

Rule 11 sanction of choice").

12The district court found that the City is the "only party
interested in receiving sanctions," Silva, slip op. at 4 (May 6,

1993), because it had agreed to pay the defendants' counsel fees
incurred in this action, id. Consequently, it ordered all

sanctions paid to the City.

16

Cir. 1988) (similar).

The district court rejected Linder's argument, finding

instead that "if plaintiffs' case had not been so utterly without

merit, this 'redundant' representation might have proved essen-

tial to these defendants," Silva, slip op. at 13 (May 6, 1993),

and therefore that the employment of multiple attorneys during

the merits phrase was reasonably required. We agree that it was

reasonable for the five defendants, in their individual capaci-

ties, to obtain representation by their own counsel while the

merits of plaintiffs' claims remained in litigation, since

counsel to the City represented the individual defendants in

their official capacities only. Linder points to no authority

for the implicit assumption that reasonable mitigation efforts

require that the private interests of parties sued in their

individual capacities must go unrepresented. Cf. Mariani, 983

F.2d at 8 n.5. Nor has he shown that the respective private

interests of these individual defendants during the merits phase

did not conflict to the point that mutual representation was

precluded.13 Cf. Brandt v. Schal Assoc., Inc., 960 F.2d at

640, 648 (7th Cir. 1992) ("[w]e have little sympathy for the

litigant who fires a big gun, and when the adversary returns

fire, complains because he was only firing blanks").

The court further found that "the total time spent by

13Although the district court did not describe their precise
nature, Linder does not challenge its finding that there were
potential conflicts of interest among the various individual
defendants. Thus, Linder failed to demonstrate an abuse of
discretion. See Navarro-Ayala, 968 F.2d at 1425.

17

each attorney on the merits was not excessive." Silva, slip op.

at 13 (Nov. 5, 1992). The court also disallowed all fees for

legal services, except those services directly rendered to the

City, after the point in time when it became clear that no

conflicts of interest precluded the individual defendants' joint

representation by counsel to the City. See Brandt, 960 F.2d at

649 (no failure to mitigate where sanctioned attorney's broad

complaint necessitated investment of extensive attorney time in

defense and district court carefully monitored procedure). A

party is required to mitigate expenses only insofar as is reason-

able. Our review of the record discloses no basis for supposing

that the district court abused its discretion by allowing a

$53,528.81 reimbursement to the City for legal services rendered

during the merits phase. See Navarro-Ayala, 968 F.2d at 1426

("When the district court settles upon a monetary sanction and

fixes a dollar amount, a reviewing tribunal should defer, within

broad limits, to the district court's exercise of its informed

discretion. Nevertheless, the court of appeals must be careful

not merely to 'rubber-stamp the decisions of the district

court.'") (citation omitted).

b. Sanctions Phase

The district court disallowed all fees requested in

relation to the sanctions phase of the litigation except for

18

those incurred by the City.14 The court found that counsel to

the individual defendants had been notified in advance that the

City no longer believed there existed any conflict of interest

precluding joint representation. Thus, the court allowed only

$21,821.15 in total fees and costs for 188 out of over 1500 hours

expended by all counsel representing defendants during the

sanctions phase. Linder does not challenge the reasonableness of

the fees incurred by the City in the sanctions phase.15

We therefore affirm the district court judgement.

Affirmed.

14The district court adjusted for the additional hearing
time required on the section 1988 motion by allowing fees for
only 50% of the total time expended by defendants' counsel at the
sanctions hearing, a finding not challenged on appeal.

15Linder argues, however, apparently for the first time,
that the district court abused its discretion by failing to take
into account his financial ability to respond to the fee award.
Even assuming this claim has been preserved, Linder presented no
evidence concerning his financial condition, nor has he alleged
financial inability to satisfy the sanction. Thus, there was no
abuse of discretion. See White v. General Motors Corp., Inc.,

908 F.2d 675, 685 (10th Cir. 1990) ("[i]nability to pay what the
court would otherwise regard as an appropriate sanction should be
treated as reasonably akin to an affirmative defense, with the
burden upon the parties being sanctioned to come forward with
evidence of their financial status"), cert. denied, 498 U.S. 1069

(1991).
We likewise reject Linder's claim that attorney fees reason-
ably incurred in the sanctions phase may not be made the subject
of a Rule 11 sanction. See Brandt, 960 F.2d at 651 (costs

incurred in litigating request for Rule 11 sanctions in district
court recoverable as part of Rule 11 sanction); Robinson v. Dean

Witter Reynolds, Inc., 129 F.R.D. 15, 22 (D. Mass. 1989). Cf.

Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 949-50 (1st Cir.

1984) (reasonable fees and costs incurred in recovering attor-
ney's fees under 1988 are reimbursable under 1988).
Finally, although Linder argues that Rule 11 sanctions may
chill civil rights actions, we cannot agree that a groundless
civil rights action is any less appropriate a candidate for Rule
11 sanctions than other groundless actions.

19